UNITED STATES of America

v.

**Joseph DONATO.**

**Crim. No. 22515.**

United States District Court
E. D. Pennsylvania.

June 30, 1967.

Drew J. T. O'Keefe, U. S. Atty., Harold S. O'Brian, Asst. U. S. Atty., for plaintiff.

Herman Bloom, Philadelphia, Pa., for defendant.

## MEMORANDUM SUR DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

VAN DUSEN, District Judge.

On February 26, 1966, shortly after nine o'clock P.M., in the United States Mint, 16th and Spring Garden Streets, Philadelphia, there was a loud noise which sounded like an explosion. Upon investigation, Sergeant Galati of the Mint security guards found evidence that a firecracker or other explosive had been exploded (N.T. 34). He reported this to his superior, Captain Carr, who then himself examined the evidence (N.T. 12). Captain Carr determined to search all Mint employee lockers in order to find any additional fireworks or explosives which might be hidden in them (N.T. 12). During the course of this search, he opened defendant Donato's locker and found, under defendant's hat, a cloth bag which appeared to contain quarters (N.T. 10, 35). He replaced the bag in the locker, upon which he placed a padlock, and had the defendant summoned to the Mint security guard office

(N.T. 10, 22). Defendant was held in the guard office until Secret Service Agent Wagner arrived to question him. After carefully warning him of his right to remain silent and his right to counsel, Agent Wagner asked the defendant some questions and then accompanied him to the employee locker room (N.T. 45, 47–48). When the padlock on his locker was removed, defendant opened the locker, lifted up his hat, and handed Agent Wagner the cloth bag which was subsequently found to contain 192 quarters (N.T. 48, 49). Defendant then informed the agent that he had some quarters in his jacket pockets (N.T. 48). The jacket was found to contain 90 quarters, which were also given to Agent Wagner (N.T. 54). On returning to the guard office, defendant gave Agent Wagner a statement which was suppressed as evidence at the trial out of an abundance of caution (N.T. 49, 73).

After a trial before the undersigned, sitting without a jury, the defendant was found guilty of embezzlement under 18 U.S.C. § 332 (Document 6, p. 125). Defendant has filed a motion for judgment of acquittal, alleging, first, that the evidence is insufficient to make out the crime of embezzlement and, second, that the court erred in refusing to suppress the coins found in his locker.

1. *The evidence is sufficient to show the crime of embezzlement.*

Defendant argues that the Government's evidence fails to show the crime of embezzlement in that there is no evidence that the coins found in defendant's locker were owned by the Government or that such coins were ever committed to the defendant's possession (brief for defendant, pp. 1, 3). The record shows that defendant was employed at the Mint as a trainee pressman and that, in the normal course of his work, he would handle completed coins as they came off the pressing machines (N.T. 91, 94–95). After inspecting the coins and finding them to be without defects, the pressman opens a trap through which the coins drop into a container at the foot of the press (N.T. 94). Pressmen have

ample opportunity to take coins from these containers because no individual pressman is observed by his supervisor at all times (N.T. 98). Upon examining the coins found in defendant's locker (G–2B), Anthony Dougherty, assistant foreman in the coining division of the United States Mint in Philadelphia, testified that they looked as though they had just been struck off a press (N.T. 96), and that they all bore the same date (1965) as those run off by the Philadelphia Mint in February of 1966 (N.T. 96–97). Mint regulations forbid employees to remove coins from the pressroom (N.T. 99). Mr. Dougherty testified that he did not give defendant authority to remove any coins from the pressroom (N.T. 100) and that there would be no reason for a Mint employee to have coins in a part of the Mint building other than the room in which he was working (N.T. 101).

The only reasonable inference permitted by the evidence is that the defendant took these quarters from his working area and placed them in his locker so that he could later remove them from the building. Thus, the evidence supports a finding that all of the elements of the crime of embezzlement of metals are present. See 18 U.S.C. § 332; Moore v. United States, 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895). The cases holding that possession of stolen goods permits an inference that such goods were unlawfully acquired by the possessor are pertinent. See United States v. Lefkowitz, 284 F.2d 310, 313 (2nd Cir. 1960); United States v. Allegrucci, 258 F.2d 70 (3rd Cir. 1958).

Most of the cases cited by defendant merely affirm the general proposition that Government ownership is a necessary element of the crime of embezzlement from the Government. They are not apposite to the issue presented here, which is whether the Government has shown Government ownership and entrusting to defendant. Although in Schell v. United States, 261 F. 593 (8th Cir. 1919), there was evidence of a coin shortage, the opinion of the court does not indicate that evidence of a shortage is a prerequisite to a finding of guilt in embezzlement cases. Naftzger v. United States, 200 F. 494 (8th Cir. 1919), is distinguishable from the instant case in that it involved a prosecution for receiving stamps stolen from the United States. The evidence in that case showed only that the defendant had purchased the stamps from one Burt under circumstances which indicated that they had been stolen. The court held that there could be no presumption that the stamps had been stolen from the United States, rather than from someone who had bought them from the Government. 200 F. at 498. Here the circumstances surrounding the finding of the coins permit only one reasonable inference as indicated above.

2. *Defendant's motion to suppress the coins was properly denied.*

The locker in which the coins were found was the property of the United States Government. It had been assigned to defendant for his exclusive[1] use subject to a valid Government regulation which provides: "No mint lockers in mint institutions shall be considered to be private lockers"[2] (N.T. 19). All employee lockers were subject to inspection, and were regularly inspected by the Mint security guards for sanitation purposes (N.T. 14, 19). The Mint security guards had a master key which opened all the employee lockers (N.T. 14, 37). It makes no difference that there was no specific evidence that defendant had personal knowledge of the above regulation or of the master key, because he

---

1. Exclusive use in this regard means only exclusive of use by other employees.

2. The regulation further provides that an employee who wishes to put his own lock on a locker assigned to him may do so only if he provides the superintendent of the institution with a duplicate key "so that if necessary an inspection may be made of the contents of the locker" (N.T. 19).

could have acquired no greater right of privacy in the Government-owned locker than he was given by the Government.[3] The instant case is analogous to United States v. Grisby, 335 F.2d 652 (4th Cir. 1964), where a search without a warrant of a Marine Corporal's living quarters on Parris Island was upheld because a military regulation permitted such a search on the authorization of a commanding officer. In so ruling, the court considered the importance to the military of maintaining order and discipline. 335 F.2d at 654. In the present case there is a Government regulation[4] which permits the Mint security guards to inspect any and all Mint employee lockers whenever necessary (N.T. 19). Captain Carr searched the lockers in order to find any additional fireworks which may have been hidden there (N.T. 12). The search of the lockers was justified in order to maintain the order and security of the Mint. See, also, Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946); United States v. Crowley, 9 F.2d 927 (N.D.Ga.1922).

 Defendant's argument that the right of the Mint security guards, if any, to inspect the employee lockers was limited and did not include authority to search for firecrackers under the circumstances here presented is rejected. The Government regulation referred to above does not indicate any limitation on the power of security officers to inspect Mint lockers; inspections apparently may be made whenever necessary for any reason. In any event, no reason appears why a search for fireworks or explosives, which could disrupt the orderly functioning of the Mint, is less justified than an inspection for sanitary purposes.

An appropriate order will be entered at the time of sentencing.

---

3. It is noted, however, that notices that monthly inspections would be made were put up on the employee bulletin boards "a couple of years" before the date of the trial (N.T. 16). There were about 30 such bulletin boards, all in places where the employees would see them (N.T. 17). However, Captain Carr did not think that the notices were still posted as of the date of trial (N.T. 16). Captain Carr also testified that he understood that every new employee is given a copy of the Mint regulations when he starts work at this Mint, although he did not know whether defendant had received a copy (N.T. 21). In addition, there was testimony that the Mint security guards frequently used their master key to open lockers for employees who had forgotten their keys (N.T. 13). The guards were often observed by the Mint employees as they inspected the lockers and opened lockers for employees (N.T. 15, 37).

4. The existence of this regulation distinguishes the present case from United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019 (1951).