UNITED STATES of America, Appellee,

v.

Ronald Miller SPEIGHTS, Appellant.

No. 76–2000.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule
12(6) May 6, 1977.

Decided June 7, 1977.

Robert W. Gluck, Weiner & Sussan, East Brunswick, N. J., for appellant.

John J. Barry, Asst. U. S. Atty., Jonathan L. Goldstein, U. S. Atty., Newark, N. J., for appellee.

Submitted under Third Circuit Rule
12(6) May 6, 1977

Before SEITZ, Chief Judge, ROSENN, Circuit Judge and LORD, District Judge.*

## OPINION OF THE COURT

JOSEPH S. LORD, III, District Judge.

Appellant, Ronald Miller Speights, was convicted by a jury of knowingly possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871. On appeal, Speights alleges that the district court erred in denying his motion to suppress the sawed-off shotgun which had been seized after a search of his locker at police headquarters in New Brunswick, New Jersey. We reverse.

At the time of his arrest, Speights was a police officer for five or six years. In the course of an investigation into a breaking and entering ring, the Middlesex County (New Jersey) Prosecutor received corroborated information that Speights had a sawed-off shotgun in his police locker. The Prosecutor went to the New Brunswick Police Chief with the information. At the Prosecutor's request, the Police Chief consented to having a sergeant in the Service Department open eight lockers, including Speights'.

Speights' locker was secured by both a police-issued lock and a personal lock. The sergeant opened the issued lock with a master key and he sawed off the personal lock

---

* Joseph S. Lord, III, Chief Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

with bolt cutters. Of the 113 police lockers, forty or fifty percent were secured by personal locks. In fact, seven of the eight lockers opened by the sergeant had personal locks which had to be sawed off. The eleven most recently purchased police lockers did not have issued locks and could only be secured with personal locks.

There was no regulation concerning the use of private locks on the lockers. No officer had been given permission to put a personal lock on the locker, nor had any officer been told that such locks were impermissible or been required to provide the department with a duplicate key (or combination). A master key to the issued locks was available to those police officers who might have misplaced their key and this was common knowledge. In fact, Speights admitted he was aware of the existence of the master key.

There was no regulation as to what officers might keep in their lockers. The lockers were often utilized for safekeeping personal belongings as well as police equipment. No officer was ever forbidden from keeping personal items in the locker.

The government admits that appellant felt the contents of his locker were personal and private. There was no regulation or notice to the ranks that the lockers might be searched. However, on one occasion three years earlier, a search was conducted of an officer's locker who another officer had claimed was in possession of the latter's weapon. In addition, in the past twelve years there were three or four routine inspections of the lockers to check on cleanliness.

Speights' locker was opened without a search warrant. The government concedes that the circumstances of the search do not fall within one of the well-defined warrant exceptions. Instead, the government challenges the applicability of the fourth amendment. Speights may claim the protection of the fourth amendment only if the area searched was one in which he held a reasonable expectation of freedom from governmental intrusion. *United States v. White,* 401 U.S. 745, 751–52, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Katz v. United States,* 389 U.S. 347, 351, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Speights concededly had a subjective expectation of privacy in the locker assigned to him at police headquarters, but the issue is whether that expectation was reasonable and thus constitutionally justifiable. *See United States v. Kahan,* 350 F.Supp. 784 (S.D.N.Y.1972), *modified on other grounds,* 479 F.2d 290 (2d Cir. 1973), *rev'd.,* 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974).

Appellant was permitted to keep personal belongings in his locker. There was no regulation or notice that the lockers might be searched. Moreover, when appellant placed a personal lock on his locker, he took affirmative action to secure his privacy. The police department acquiesced in appellant's attempt to secure his privacy by permitting the use of personal locks and by not requiring that duplicate keys or combinations be made available to the department. These facts more than furnish a prima facie showing of a reasonable expectation of privacy. The trial court gave insufficient weight to these factors and placed too much reliance on factors which we conclude do not negate a reasonable expectation of privacy.

The trial court stated:

"That the failure of the department to prohibit the use of personal locks may have indicated acquiescence in the attempt by the men to secure the privacy of their lockers is only one factor to be considered in this inquiry. This court places equal weight on the fact that the lockers are owned by the department; that they were made available primarily for the storage of police equipment; that a master key was available to superior officers; and that the men, including Speights, knew that most of the lockers could be opened through the use of the master key. Furthermore, I do not lose sight of the fact that these lockers were in a police headquarters. The station house is a place where firearms and am-

munition may be kept, and contraband secured after it has been confiscated by policemen in the proper performance of their duties. Accordingly, conditions exist that make the necessity of a search far more likely than would be the case in a private dwelling, or even some other place of employment. *See Shaffer v. Field,* 339 F.Supp. 997, 1003 (C.D.Cal. 1972), *aff'd,* 484 F.2d 1196 (9th Cir. 1973)." 413 F.Supp. 1221, 1223–24.

The district court's assertion that the conditions in a station house make the necessity of a search far more likely is not supported by any evidence. There was no testimony that confiscated evidence was kept in these lockers. In addition, the reality that there had never been a search for confiscated contraband or the like belies any inference that a search for such items was likely to be necessary.

The fact that the police officers, including Speights, knew that most of the lockers could be opened with a master key does not make an expectation of privacy unreasonable. The master key was loaned to officers who had misplaced their key and there is no evidence that the key was used for any other purpose. But in any event, appellant also had a private lock on his locker which had, in effect, been tacitly approved by the department. Therefore the master key had little bearing on the reasonableness of Speights' expectation of privacy.

While the lockers were primarily used for the storage of police equipment, they were also frequently used for the storage of personal items. There was no evidence that the storage of police equipment in the locker made it more likely that the department would have to open the locker. In fact, the lockers had never been opened for this purpose. And since the department permitted the storing of personal items in the locker, the primary usage does not negate the reasonableness of an expectation of privacy.

The district court recognized that the police department's property interest in the lockers does not determine the applicability of the fourth amendment. 413 F.Supp. at 1224. *See, e.g., Katz v. United States, su-pra,* 389 U.S. at 353, 88 S.Ct. 507, 19 L.Ed.2d 576. The court considered the fact that appellant did not own the locker as bearing on the reasonableness of appellant's belief that his permission would be obtained before a search of the locker was undertaken. However, we have found that appellant made a prima facie showing of a reasonable expectation of privacy. Only if the police department had a practice of opening lockers with private locks without the consent of the user would appellant's privacy expectation be unreasonable.

The evidence alluded to one search for a weapon three years earlier and three or four routine inspections for cleanliness which occurred in the past twelve years. As to the weapon search, the record does not reveal whether the locker was opened with a master key, whether the officer had a private lock, whether the officer had consented to the search or whether a warrant had been issued. As to the locker inspections, the record does not reveal whether the lockers were opened with a master key, whether any notice was provided to the officers or whether there had been any such inspections in appellant's five or six years on the force. In short, there is insufficient evidence to conclude that the police department practice negated Speights' otherwise reasonable expectation of privacy.

The few analogous reported cases support our view that the evidence in this case is insufficient to find that there is no constitutionally justifiable expectation of privacy. In each of the cases, the government-employer took actions which were entirely inconsistent with a reasonable expectation of privacy. In *United States v. Donato,* D.C., 269 F.Supp. 921, *aff'd,* 379 F.2d 288 (3d Cir. 1967), the warrantless search of a United States Mint employee's locker was upheld where there was a government regulation providing that Mint lockers were not to be considered private lockers; all employee lockers were subject to inspection and were regularly inspected by Mint security guards for sanitation purposes; and Mint security guards had a master key which opened all the employee lockers. *Id.* at 923.

Similarly, in *Shaffer v. Field,* 339 F.Supp. 997 (C.D.Cal.1972), *aff'd,* 484 F.2d 1196 (9th Cir. 1973), the warrantless search of a deputy sheriff's locker was upheld where the locks given the deputies had both keys and combinations but the commander kept a master key and the combination to all locks; the lockers and locks could be changed at will; and on at least three occasions in the past, deputies' lockers had been searched by commanders without the deputies' permission. *Id.* at 1003.

In *United States v. Bunkers,* 521 F.2d 1217 (9th Cir.), *cert. denied,* 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975), the warrantless search for stolen C.O.D. parcels of a postal employee's locker was upheld because of a regulation allowing for such searches where there is reasonable cause to suspect criminal activity; and because the defendant had been fully advised of the regulation, conditions placed upon her use of the locker and the government's right to search it. *Id.* at 1219–20.

*Donato, Shaffer* and *Bunkers* all relied on specific regulations and practices in finding that an expectation of privacy was not reasonable. In this case, there is no regulation and no police practice has been shown which would alert an officer to expect unconsented locker searches. Appellant met his burden of showing a constitutionally justified expectation of privacy in his locker and the government failed to rebut appellant's evidence. Therefore, the district court erred in not granting appellant's motion to suppress the sawed-off shotgun.

The judgment of the district court will be reversed and the case remanded for a new trial.