Francis D. GILLARD, Appellant,

v.

Harold F. SCHMIDT.

No. 77–1957.

United States Court of Appeals,
Third Circuit.

Argued March 30, 1978.

Decided July 3, 1978.

David Rubin, Matthew Horowitz, Washington, D. C., Theodore Simon, Goldberg, Simon & Selikoff, Clifton, N. J., Faith Hanna, Nat. Ed. Ass'n, Washington, D. C., for appellant.

Michael J. Mella, P. A., Fair Lawn, N. J., for appellee.

Before ADAMS, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

On February 4, 1976, a political cartoon, drawn over the signature "Ed Ucation," appeared in a local newspaper of Fair Lawn, New Jersey, the "Fair Lawn Shopper." The cartoon ridiculed the financial and personnel policies of the Fair Lawn, New Jersey, Board of Education by depicting the Board members as poker players, apparently gambling away employees' salaries and jobs. At the first meeting of the Board following publication of the cartoon, defendant-appellee Harold Schmidt, an elected member of the Board, directed the Board's attention to the cartoon, which he characterized as a "total disgrace to the elected body," and urged the Board to find the artist and punish him. The Board never took any action on the matter.

Schmidt subsequently received information indicating that Francis Gillard, plaintiff-appellant, a guidance counselor employed by the Fair Lawn School System, was the offending cartoonist. On the evening of February 10, 1976, Schmidt went to Gillard's school, the Thomas Jefferson Junior High School, which was open that evening for participants in the Adult Education Program. After entering the building, Schmidt found a janitor with a pass key, and directed him to unlock the door to the guidance counselor's suite—one large room partitioned into five smaller offices. In the janitor's presence, Schmidt reconnoitered the offices to ascertain which one was Gillard's. When he had located it, he entered it to search for clues linking Gillard to the cartoon. Observing a slightly open drawer in Gillard's desk, Schmidt pulled it completely open, revealing copies of the cartoon. Having confirmed his expectations, Schmidt left the office without further rummaging through Gillard's desk, and the janitor followed him out, locking the office behind him.

Gillard brought suit in the United States District Court for the District of New Jersey, alleging a violation of his fourth amendment rights to be free from unreasonable government intrusion, and asserting a cause of action under 42 U.S.C. § 1983. The district court, trying the case without a jury, found that Schmidt had surreptitiously searched Gillard's office as part of a campaign to retaliate against Gillard's unflattering cartoon. Accepting, *arguendo*, plaintiff's contention that he had a reasonable expectation of privacy from his employer's investigatory desk search, the district court nevertheless dismissed the complaint, reasoning that the injury alleged fell outside the protection of the fourth amendment. We disagree and we reverse.

## I.

42 U.S.C. § 1983 reads, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity . . . .

Recovery in a section 1983 action requires the presence of two elements: deprivation of a right secured by the "Constitution and laws" of the United States, and a showing that such deprivation occurred under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 151, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). For the purposes of analysis, we will discuss these elements separately.

### A. *Constitutional Deprivation*

The district court, in holding that the injury alleged here did not enjoy fourth amendment protection, reasoned that plaintiff's assertion of a reasonable expectation of privacy in his desk was an attempt to translate constitutional protection against unlawful search and seizure—in the context of suppression of criminal evidence—into a nebulous right of privacy. The district

court's holding is based on its reading of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In that case, government officials published Davis' photograph in a flyer depicting local "active shoplifters," even though his guilt was never established, and the charge was dismissed shortly after the flyer's circulation. The Supreme Court held, first, that distribution of the flyer deprived Davis of no liberty or property interest protected by the fourteenth amendment, in particular an alleged injury to reputation. Second, the Supreme Court held that Davis' privacy interest was not constitutionally protected; it involved neither an unreasonable search and seizure, prohibited by the fourth amendment, nor an intrusion of certain fundamental privacy rights, prohibited by the fourteenth amendment. Noting an absence of a general right of privacy, the Court found that Davis' privacy interest was not embraced within the limited "zones of privacy" created by the specific constitutional guarantees in the fourth and fourteenth amendments.

The district court misconstrued the essence of the injury alleged and it failed to recognize that the fourth amendment's protection of certain privacy interests did apply in this case. Consequently, the district court focused on the Court's general disclaimer of a general right of privacy. In fact, Gillard's allegation of injury stemming from Schmidt's foraging about in his desk states a claim for fourth amendment protection well-recognized by the case law.

The fourth amendment to the Constitution reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

A primary object of this amendment is to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal*

*Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). Thus, the Supreme Court has extended fourth amendment protection beyond the "paradigmatic entry" into a house by police officers in search of criminal evidence to civil investigations of business premises. *Michigan v. Tyler,* —— U.S. ——, ——, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). *See Zurcher v. Stanford Daily,* —— U.S. ——, ——, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). The Court has reasoned that "[i]f the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal law or breaches of other statutory or regulatory standards." *Marshall v. Barlow's Inc.,* —— U.S. ——, ——, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978). The Supreme Court has stated explicitly that this "privacy interest," the right of a citizen to be free in his private affairs from government intrusion, *Whalen v. Roe,* 429 U.S. 589, 599 n. 24, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977), as one facet of a broad constitutional right to privacy, "is directly protected by the Fourth Amendment." *Id.*

■ These cases demonstrate that the fourth amendment embraces privacy rights asserted in the context of an unreasonable government search, as alleged here. Therefore, we hold that the plaintiff has properly alleged a violation of a fourth amendment right cognizable in the federal courts. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (cause of action implied directly from fourth amendment against federal officers).

Having decided only that the fourth amendment protects against the type of privacy invasion alleged here, our analysis is not yet complete. We must now determine whether the warrantless search in this case compels application of the fourth amendment, for Gillard may claim its protection only if the area searched was one in which he had "a reasonable expectation of freedom from governmental intrusion." *United States v. Speights,* 557 F.2d 362, 363

(3d Cir. 1977), *quoting United States v. White,* 401 U.S. 745, 751–52, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

■ As a guidance counselor, Gillard dealt daily with students' private, personal problems. Working in an office secured by a locked door at a desk containing psychological profiles and other confidential student records, Gillard had a reasonable expectation that papers in his desk would remain safe from prying eyes. Gillard's privacy expectation was by no means atypical, for as the Fair Lawn Superintendent of Schools testified at trial:

> Speaking not only as superintendent of schools, but as a former teacher, my desk as a teacher was probably the only place within the classroom or within a department that you could keep private. . . .
>
> I think it is reasonable for any teacher or any administrator to assume that if they would put something in their desk, that it would be for their eyes only and not accessible to anyone else.

Furthermore, the Fair Lawn School Board impliedly approved this expectation of privacy by issuing a statement shortly after Schmidt's search disapproving it:

> By virtue of his position as trustee, the Board president, vice-president, and committee chairman or member has no right to enter the closed school building unless he or she is in the company of the proper school administrator, does so at the specific direction of the Board, does so solely for a purpose directly related to his or her duty as Board officer, committee chairman or member. The Board does not and cannot authorize, approve or condone the entry into a closed school building by one or more of its members under any other circumstance.

We therefore hold that a guidance counselor, charged with maintaining sensitive student records, in the absence of an accepted practice or regulation to the contrary, enjoys a reasonable expectation of privacy in his school desk. *See Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1967) (working in shared office suffi-

cient to give rise to reasonable expectation of privacy for records kept in that office); *United States v. Speights, supra*, (policemen had reasonable expectation of privacy in private locker in police station).

■ Defendant's contention that Gillard cannot claim a fourth amendment violation because the desk belonged to the school system is unsupported by the case law. Applicability of the fourth amendment does not turn on the nature of the property interest in the searched premises, but on the reasonableness of the person's privacy expectation. *Mancusi v. DeForte, supra*, at 368, 88 S.Ct. 2120; *United States v. Speights, supra*, at 364. Furthermore, defendant's assertion that a public employer is free to search the premises of an employee is a broad overstatement of the relevant law. The cases indicate that an employer may conduct a search in accordance with a regulation or practice that would dispel in advance any expectations of privacy. *E. g. United States v. Bunkers*, 521 F.2d 1217 (9th Cir.), *cert. denied*, 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975) (postal employee's locker not protected by fourth amendment when government regulation authorized searches); *United States v. Donato*, 269 F.Supp. 921 (D.C.), *aff'd* 379 F.2d 288 (3d Cir. 1967) (warrantless search of U.S. Mint employee's locker upheld where government regulation provided Mint lockers not private). Our reading of the record, however, reveals no regulation or practice which would act to negative Gillard's reasonable expectation of privacy in his desk.[1] We conclude, therefore that Gillard has proven the first element of a section 1983 action, deprivation of a right secured by the Constitution and laws of the United States.

#### B. *Under Color of State Law*

■ The second element of a section 1983 action, whether the alleged constitutional violation occurred under color of state law, has been defined in this circuit as "[t]he misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . ." *Basista v. Weir*, 340 F.2d 74, 80 (3d Cir. 1965). In the instant case, Schmidt gained entry to Gillard's office by securing the aid of a janitor with a pass key. Defendant does not contest plaintiff's assertion that such entry was gained under color of state law, conceding in oral argument that the janitor would not have unlocked the door had he not recognized Schmidt as a member of the School Board. In view of both parties' agreement that Schmidt's acts were undertaken under color of state law, and in view of the obvious applicability of the rule of *Basista* in the instant case, we have no difficulty in holding that Schmidt's search of Gillard's desk was an action under color of state law.

#### II.

■ Having concluded that Schmidt's search of Gillard's desk constituted a fourth amendment violation committed under color of state law, we hold that plaintiff has successfully proved the elements of his section 1983 action. His measure of damages appears to be minimal or nominal but this can be ascertained only after a hearing. *See Paton v. La Prade*, 524 F.2d 862, 872 (3d Cir. 1975). The district court's dismissal of the complaint will be reversed and the case remanded for an entry of judgment in favor of the plaintiff, and for a hearing to determine the amount of damages.

---

1. Because the record contains no evidence that Schmidt was acting to recover government property, or was undertaking as an employer to monitor Gillard's performance of his official duties, we have no occasion to determine the force of precedents which indicate that a public employer may invade an employee's privacy when the invasion is "work-related." *E. g.,* *United States v. Nasser*, 476 F.2d 1111, 1123 (7th Cir. 1973) (IRS's search of employee's office to determine employee's proper work performance upheld); *see United States v. Hagarty,* 388 F.2d 713 (7th Cir. 1968) (search of government employee's office to secure criminal evidence violated fourth amendment.)