Mark Steven **FERRIS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–81–00066–CR.

Court of Appeals of Texas, El Paso.

May 12, 1982.

Robert R. Harris, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., R. Bradford Stiles, Asst. Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This is an appeal from conviction for theft of property over $200.00 and under $10,000.00. Trial was before the court who assessed punishment at four years, punish-ment being suspended and adult probation being granted. We affirm.

Appellant rented a 10′ × 20′ storage locker from Mr. Wylie, the owner-operator of AAA Self-Storage Units in El Paso. The lease was for "one or more months" with rent due monthly. The lease was subject to termination by the lessor upon three days written notice for failure to make rental payments. The contract authorized the lessor to enter and take possession of the premises and its contents to secure collection in case of a default in rent payments.

Appellant paid the initial month's rent, but did not make subsequent payments. When rent was a month and a half overdue, Mr. Wylie entered the locker to see if there was anything to seize as security, and he discovered a stripped down Firebird automobile. He suspected that the car might be stolen and reported the vehicle identification number to the police, the reported number being 2S87U86147575. Officer Carreon checked the number and found it one digit different than that on a stolen car of the same make, the numeral 6 being the difference. Some research disclosed that the number given by Mr. Wylie had to be an error because it contained the numeral 6 where the manufacturer always placed a letter.

At police request, Mr. Wylie reentered the locker to double check the number. He found he had made a mistake and reported the new number to Officer Carreon. The new number matched the number on the stolen Firebird and Officer Carreon secured a search warrant. The stolen car parts were seized, and police officers then went to Appellant's home to execute a warrant for his arrest. The Appellant consented to a search of his premises and more pieces of the stolen vehicle were uncovered.

Appellant's Ground of Error No. 1 asserts that the trial court erred in refusing to suppress the evidence found in the locker because it was acquired as the result of an unreasonable search and seizure.

█ This case involves three entries into the Appellant's storage locker: (1) the ini-

tial entry by the landlord, (2) the second entry at police request, and (3) the execution of a search warrant obtained with the information supplied from the first two entries. If a search does not involve governmental action, such as Mr. Wylie's initial entry into the storage room, it cannot violate the Fourth Amendment which applies to State actions only. *Barnes v. United States,* 373 F.2d 517, 518 (5th Cir. 1967). The third entry was under warrant based on probable cause. The critical question, therefore, is the constitutional validity of the second search, *i.e.,* the one conducted by Mr. Wylie at police request.

■ The function of the Fourth Amendment is to protect people from unreasonable government intrusions into their legitimate expectations of privacy. *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538, 546 (1977). Under proper circumstances, a storage locker is a place entitled to Fourth Amendment and Texas Constitution protection. *See: Kolb v. State,* 532 S.W.2d 87 (Tex.Cr.App. 1976). However, when one grants to others a possessory right in a place where he would normally have an expectation of privacy, he assumes the risk that the third party will allow someone else to look inside. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249–250 (1974). This is why a warrantless search is constitutionally valid where it is consented to by a third party who possesses common authority over, or sufficient relationship to, the premises or effects inspected. *Id.*

If Mr. Wylie held a sufficient relationship to consent to a search of the locker, it stands to reason that he could also conduct a search on behalf of the authorities. Appellant recognizes this, but claims Mr. Wylie, as landlord, had no more authority to consent to a search than did the landlord in *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). That case held that police had illegally entered a tenant's room to search for evidence under the guise of exercising the landlord's right to enter and view waste. This result was achieved on three grounds: (1) the landlord

and officers did not comply with the common law conditions for such an entry; (2) their purpose was to find incriminating evidence, not to view waste; and (3) to uphold the search solely on the basis of an ancient English common law right would leave tenants' houses secure only in the discretion of landlords. *Id.* at 616–617, 81 S.Ct. at 779–780, 5 L.Ed.2d at 833–834.

■ While Mr. Wylie's second entry into the locker was for the purpose of discovering evidence, the landlord's right was far more substantial than that in *Chapman.* In the present case, the landlord held a full possessory right to the premises in view of Appellant's failure to pay rent for a month and a half. This right was expressed in the rental agreement executed by Appellant. The tenant in *Chapman* retained a legitimate expectation of privacy in his rented room; Appellant had no such legitimate expectation because he could not reasonably believe that Mr. Wylie would forego his right of entry and later proceed to foreclose on the property in the locker.

Under the circumstances of this case, Mr. Wylie had an absolute right to enter the storage locker and to examine its contents. Appellant assumed the risk that the landlord would exercise this right and inform the authorities of what he found. Furthermore, even though the second entry was made at police request, Mr. Wylie himself had a legitimate right to reexamine the serial number to determine if he had made a mistake on his first examination. If the property was in truth stolen, his rights to the property would be subordinate to the rightful owner. Thus, the second entry into Appellant's storage locker did not violate a legitimate expectation of privacy and did not involve police misconduct. The trial court correctly denied Appellant's motion to suppress the evidence, and Ground of Error No. 1 is overruled.

Ground of Error No. 2 charges error in the trial court's refusal to suppress the evidence seized at the Appellant's home. Appellant argues that even though he consented, the incriminating evidence was the fruit of the unconstitutional search of the locker.

However, since the search of Appellant's locker was constitutional, the "poisonous fruit" doctrine does not apply. Therefore, Appellant's Ground of Error No. 2 is overruled.

The judgment of the trial court is affirmed.