**Brenda Lee DAWSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–92–02233–CR.**

Court of Appeals of Texas,
Dallas.

Nov. 10, 1993.

Rehearing Denied Jan. 21, 1994.

Discretionary Review Refused
March 16, 1994.

Kenneth Mark Deubner, Dallas, for appellant.

Michsel J. Sandlin, Dallas, for appellee.

Before THOMAS, CHAPMAN and ROSENBERG, JJ.

## OPINION

CHAPMAN, Justice.

Brenda Lee Dawson was charged by indictment with the offense of possession of a controlled substance. Trial was before the court on appellant's plea of nolo contendere. The trial court found that the evidence substantiated appellant's guilt, but deferred further proceedings and sentenced appellant to two years' deferred adjudication and assessed a fine of $750. In two points of error, appellant contends that the trial court erred in admitting hearsay and irrelevant testimony at her suppression hearing, and that the trial court erred in failing to grant her motion to suppress. We reverse and remand for proceedings consistent with this opinion.

### FACTS

Appellant worked as a dancer at the Showtime Club, a topless dancing establishment. Officer Robert Reeves of the Dallas Police Department testified that on July 8, 1991, he and another officer went to the Showtime Club because the Dallas Police had received an anonymous tip that an unidentified person had narcotics in a locker at the Showtime Club. Officer Reeves told the club manager, Manford Polster, about the information. He asked if Polster would perform a locker search. Polster agreed and conducted a search of all the lockers.

Polster testified that he had worked at the Showtime Club for approximately two months at the time of the search. In July 1991, the police came to Polster and said they had received information that there were drugs on the premises. The police asked Polster if he would perform a locker search. Appellant came into the dressing room from the stage and Polster ordered her to unlock her locker. Appellant removed the lock, and Polster searched her purse and the other contents of her locker in the presence of Officer Reeves and another officer. Polster found methamphetamines in appellant's purse. Polster said the locker belonged to the Showtime Club.

Polster testified that he had worked with appellant previously at another topless dancing club, and had searched her locker there.

He said the reason the lockers were searched was because the topless bar business is drug related, and searches help keep "control." In all the clubs where Polster worked, dancers' lockers were searched on a routine basis. He testified appellant had been a dancer in topless clubs for five years. He agreed that the dancers in the clubs where Polster had worked were informed that their lockers were subject to being searched either when they were hired or during certain club meetings. However, he had no personal knowledge of whether appellant had been told that the lockers used by dancers at the Showtime Club were subject to search without notice by the management. He said he had not told her that her locker was subject to search.

Polster testified that the locker was appellant's private locker for work purposes. He said he ordered her to unlock the locker at the direction of the police. Polster agreed that he was working more or less as an agent of the police. Polster testified that the only reason he searched the locker was because the police asked him to do so.

At the hearing, the following also occurred:

THE COURT: So you went out there because [Polster] asked you to be? This manager wanted to do a locker search, right?

OFFICER REEVES: Yeah.

After this, on cross-examination, Officer Reeves agreed that he went to the Showtime Club because he was dispatched there by the dispatcher. He agreed that he wished to ask the manager to do a locker search for him.

### MOTION TO SUPPRESS

#### 1. APPELLANT'S CONTENTION

Appellant contends the evidence obtained from her locker should have been suppressed because it was the product of a warrantless search made even though no exception to the warrant requirement applied. She contends Polster acted as an agent of the police in searching her locker.

#### 2. STATE'S CONTENTION

The State contends that Polster was not acting as an agent of the police in searching

the locker, so the Fourth Amendment is not implicated. *See Stoker v. State,* 788 S.W.2d 1, 11 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). The State also asserts that Polster was authorized to consent and did consent to the search of appellant's locker.

### 3. APPLICABLE LAW

#### a. Standard of Review— Suppression Hearing

■ At a suppression hearing, the trial court is the sole trier of fact. The trial court is the judge of the credibility of the witnesses and the weight of the evidence. *See Gibbs v. State,* 819 S.W.2d 821, 830–31 (Tex.Crim.App. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992); *Segura v. State,* 826 S.W.2d 178, 181 (Tex.App.—Dallas 1992, pet. ref'd). We do not engage in our own factual review. We decide whether the record supports the trial court's findings. If the record supports the trial court's findings, we are not at liberty to disturb them. We consider only whether the trial court improperly applied the law to the facts. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim. App.1990).

■ The determination of admissibility of the evidence is within the sound discretion of the trial court. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979). The court's ruling will not be reversed on appeal unless a clear abuse of discretion is shown. *See Werner v. State,* 711 S.W.2d 639, 643 (Tex.Crim. App.1986).

#### b. Right to Privacy

■ The constitutional guarantee against unreasonable searches and seizures makes the right of privacy one of the unique values of citizenship. *May v. State,* 780 S.W.2d 866, 869 (Tex.App.—Dallas 1989, pet. ref'd). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The security of privacy against arbitrary intrusion by law enforcement is at the core of the Fourth Amendment. *May,* 780 S.W.2d at 869.

■ The litmus test for determining the existence of a legitimate expectation of privacy as to a particular accused is twofold: first, did the accused exhibit by his conduct "an actual (subjective) expectation of privacy; and second, if he did, was that subjective expectation 'one that society is prepared to recognize as reasonable.'" *Crosby v. State,* 750 S.W.2d 768, 773 (Tex.Crim.App.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988) (quoting *Chapa v. State,* 729 S.W.2d 723 (Tex.Crim.App.1987)).

■ Generally, one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude others. *Crosby,* 750 S.W.2d at 778 (quoting *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). However, where an employee does not enjoy exclusive use of property, the employee does not have a reasonable expectation of privacy in the property. *See United States v. Blok,* 188 F.2d 1019, 1021 (D.C.Cir.1951). Generally, if an employee has exclusive use of a desk, the employee has a reasonable right to freedom from warrantless searches of the desk for evidence of criminal conduct. *Id.*

■ The Fourth Amendment does not shield only those who have title to the premises. One with a possessory interest and those legitimately on the premises may have standing to assert Fourth Amendment rights. *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968). The capacity to claim Fourth Amendment protection depends not upon a property right in the invaded place but upon whether the area is one in which there was a reasonable expectation of freedom from government intrusion. *Id.*

#### c. Consent to Warrantless Searches

#### (1) Consent by Accused

■ Searches and seizures without a warrant are presumed to be unreasonable.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 221, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973); *Kolb v. State,* 532 S.W.2d 87, 80 (Tex.Crim.App.1976). There is an exception to the warrant requirement for searches made with consent. A search without a warrant and without probable cause is proper if consent has been voluntarily and freely given. *May,* 780 S.W.2d at 869.

■ Several factors are to be examined in order to determine whether an accused freely and voluntarily consented: (1) whether, and to what extent, officers exhibited a show of force; (2) whether the actions of the arresting officers can be classified as flagrant misconduct; (3) whether the police threatened to obtain a search warrant if the detainee did not acquiesce, or whether the police claimed a right to search; (4) whether the police first gave the accused *Miranda* warnings; (5) whether the arrest was made in order to obtain consent; (6) whether the accused knew that he could refuse to allow a search; (7) whether consent was first offered by the accused or was in response to a police request; (8) the accused's education, intelligence, and physical condition; and (9) the proximity of the consent to the arrest, since an intervening time period can provide a degree of attenuation of the taint. *Frierson v. State,* 839 S.W.2d 841, 851 (Tex.App.—Dallas 1992, pet. ref'd) (citing *Fontenot v. State,* 792 S.W.2d 250, 253–54 (Tex.App.—Dallas 1990, no pet.)).

### (2) Consent by Those With Joint Control

■ Any person who has joint control or access over property or other sufficient relationship to the property can validly consent to the search. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *Swinney v. State,* 529 S.W.2d 70, 71 (Tex.Crim.App.1975). A third party may consent to a search of jointly controlled property if the person giving consent possesses "common authority" over or other sufficient relationship to the premises. *Matlock,* 415 U.S. at 171, 94 S.Ct. at 993. The United States Supreme Court defined and discussed "common authority" in *Matlock* as follows:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, *see Chapman v. United States,* 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828] (1961) (landlord could not validly consent to the search of a house he had rented to another) [full cite omitted], *Stoner v. California,* 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856] (1964) (night hotel clerk could not validly consent to search of customer's room) [full cite omitted] but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7.

"It is fundamental that the doctrine which recognizes the validity of a third party's consent to a search must be applied guardedly to prevent erosion of the protection of the Fourth Amendment, since it makes no requirement of the existence of probable cause for the search and does not constitute an exception based on necessity.... Thus it has been held that one who has an equal right of control or possession of premises generally does not thereby have authority to consent to a search of an area on the premises which is set aside for the exclusive use of the other." *See United States v. Poole,* 307 F.Supp. 1185, 1188–89 (E.D.La.1969).

■ The State bears the burden of proving the consent was voluntary. *Kolb,* 532 S.W.2d at 90. Mere submission to an officer's claim of lawful authority is not effective consent. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex.Crim.App.1988); *Kolb,* 532 S.W.2d at 90.

Courts have said that a third party may consent to a search of another's property where, for example, (1) a tenant of a rented storage locker fails to pay the rental price, giving the third party/landlord the right to enter or consent to search his storage locker, *Ferris v. State,* 640 S.W.2d 636, 638 (Tex.

App.—El Paso 1982, pet. ref'd), or (2) the current, non-estranged spouse of the accused consents to the search of jointly-used premises, *see Burge v. State*, 443 S.W.2d 720, 722 (Tex.Crim.App.), *cert. denied*, 396 U.S. 934, 90 S.Ct. 277, 24 L.Ed.2d 233 (1969); *May*, 780 S.W.2d at 870.

The United States Supreme Court has found consent by third parties ineffective in cases involving a warrantless search of a hotel room rented to a hotel patron, *Stoner v. California*, 376 U.S. 483, 487, 84 S.Ct. 889, 892, 11 L.Ed.2d 856 (1964) (consent to search given by hotel clerk while patron absent); and a warrantless search of a tenant's home, *Chapman v. United States*, 365 U.S. 610, 612–13, 81 S.Ct. 776, 777–78, 5 L.Ed.2d 828 (1961) (permission to search given by landlord). Other courts have found violative of the Fourth Amendment and the right to privacy a warrantless search of a government employee's desk where the employee had exclusive use of the desk and the search did not concern an employment-related offense, *United States v. Kahan*, 350 F.Supp. 784, 792 (S.D.N.Y.1972) (where supervisor consented to search), *rev'd in part on other grounds*, 479 F.2d 290 (2d. Cir.1973), *rev'd*, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974); and a warrantless search of a police officer's work locker where he exhibited an expectation of privacy by storing personal items there and placing a lock on the locker. *United States v. Speights*, 557 F.2d 362, 364–65 (3d. Cir.1977) (where employer consented to search).

### d. Searches by a Private Party

■ A wrongful search or seizure conducted by a private party does not violate the Fourth Amendment. *Stoker*, 788 S.W.2d at 11. Two factors must be considered in determining whether the person is acting as an agent of the State: (1) whether the government initiated, knew of, or acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own

ends. *See United States v. Bazan*, 807 F.2d 1200, 1203–04 (5th Cir.1986), *cert. denied*, 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).

### e. Texas and Federal Constitutions

■ The Texas Constitution contains no express guarantee of a right to privacy. *Texas State Employees Union v. Texas Dept. of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex.1987). It does contain, however, several provisions similar to those in the United States Constitution that have been recognized as implicitly creating protected "zones of privacy." *Id.* Article one, sections nine and twenty-five guarantee the sanctity of the individual's home and person against unreasonable searches and seizures. *Id.*; TEX.CONST. art. I, §§ 9, 25.

## 4. APPLICATION OF THE LAW TO THE FACTS

### a. Was Polster an Agent of the State

■ The record reflects that the police knew of and acquiesced in the search, which satisfies the first factor concerning whether Polster was acting as an agent of the State.[1] *See Bazan*, 807 F.2d at 1203. Regarding the second factor, Polster stated that the only reason the lockers were searched was because of Officer Reeves's request. Polster agreed that he was acting as an agent of the police. Therefore, he was aiding in law enforcement efforts. *Id.*

Polster testified that he liked to maintain control of drug use by the club employees, indicating that he had an interest in the search. However, because the police knew of, acquiesced in, and supervised the search, we hold Polster acted as an agent of the police when he conducted the locker search. *See id.* at 1203–04. We now address whether appellant had a reasonable expectation of privacy in her locker.

---

1. There was conflicting testimony regarding why the police initially came to the Showtime Club. However, it is undisputed that, once they arrived, they asked the manager to search the lockers. Polster testified that he was agreeable to the search, but that the only reason they were searched is because of the police request. The police were on the premises in their capacity as police officers and were interested in locating illegal drugs on the premises.

### b. Conduct Exhibiting Expectation of Privacy

 Appellant had the burden of proof to show she had a reasonable expectation of privacy in her locker. *See Speights,* 557 F.2d at 365. The record reflects that appellant placed a lock on the locker. This is evidence that she intended to exclude others from her locker. Appellant stored her purse in her locked locker. A purse is an item in which most women carry personal items and cash. That appellant stored her purse in the locker is evidence that she intended to exclude others from the locker.

Polster said that appellant's locker was her "private locker." This indicates that no other person had joint access to the locker. Polster ordered appellant to unlock the locker. This is evidence that he did not have a key to the locker, and so did not have joint access to it. There was nothing in the record to show that any other person enjoyed joint use of or had common authority over the locker. The fact that the locker was owned by the Showtime Club does not establish common authority. *See Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. We hold that appellant established that she exhibited an expectation of privacy in her locker.

The State asserts that appellant failed to establish that the dressing room where the locker was located was not accessible to the public. However, it is not the dressing room but the locker that is the focus of the privacy issue here. Appellant need not have established that she had a reasonable expectation of privacy in the dressing room, but only in her locker. Accordingly, this contention is without merit. We now address the second consideration: is appellant's expectation of privacy one that society is prepared to recognize as reasonable?

### c. Reasonableness of Expectation of Privacy

 In the case at bar, although there is no evidence of a written contract for a locker at the Showtime Club, appellant established that the Showtime Club provided her with a private locker. There was evidence that the locker was locked so that it had to be opened to view its contents. Therefore, the contents were shielded from the public view and from access by others by virtue of it being locked. The locker was located in a "dressing room." Presumably, because it was a dressing area, the public was excluded from the area around the locker. There is nothing in the record indicating that the Showtime Club did not agree that dancers could place locks on their lockers, or that the managers demanded master keys to the locks. *See Speights,* 557 F.2d at 363. We hold that, where an employee who is hired to dance or perform has been issued a private locker by her employer on which she has placed a lock, it is reasonable to expect that her belongings will be stored without being subject to search, unless she has been placed on notice of the possibility of such a search. *See id.* at 364–65.

In analogous cases, courts have held that employees have a reasonable expectation of privacy in their desks or lockers, provided that it is not shown that the employee knew that others could search or have access to the locker or desk. *See Speights,* 557 F.2d at 363–64 (employee's locker); *Kahan,* 350 F.Supp. at 793–94 (employee's desk).

In cases upholding warrantless searches of employees' lockers where a third party gave consent to search, courts have noted that some sort of notice of potential searches was posted or given, or that others were known to have access to the locker so that the employee had a diminished expectation of privacy. *See United States v. Donato,* 269 F.Supp. 921, 923 (E.D.Pa.), *aff'd,* 379 F.2d 288 (3d. Cir.1967) (others had key to periodically-searched locker, and notice of government regulation allowing search was given to all employees);[2] *United States v. Bunkers,*

---

2. The court in *Donato* said actual notice of potential searches is not necessary. *Donato,* 269 F.Supp. at 924. However, *Donato* is a pre-*Katz* case. In *Katz v. United States,* the court discussed the accused's expectation of privacy. *Katz,* 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Logically, a reasonable expectation of privacy must come from the expectation of the person asserting the right. Courts look at the expectation of privacy from the point of view of the accused. *See Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d

521 F.2d 1217, 1219–20 (9th Cir.), *cert. denied,* 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975) (postal employee had been given copy of regulations permitting locker searches); *Shaffer v. Field,* 339 F.Supp. 997, 1003 (C.D.Cal.1972), *aff'd,* 484 F.2d 1196 (9th Cir.1973) (holding there must be evidence that something "put [the accused] on reasonable notice" that his locker could be examined by others without his consent). In this case, the record does not show any such notice.

We hold that, under the facts of this case, appellant's expectation of privacy in her private locker, to which she has taken the extra step of adding a lock, is reasonable. Because the evidence in the record does not indicate that appellant had reason to know that her locker was subject to search, we hold that appellant's expectation of privacy in her work locker is one that society would consider "reasonable." *See Speights,* 557 F.2d at 363.

■ Once appellant established her exclusive use of the locker, and her exclusion of others from it, it was the State's burden to come forward with evidence showing that appellant did not have a reasonable expectation of privacy in it. *See Speights,* 557 F.2d at 363. The State could have established a lack of an expectation of privacy if, for instance, there was evidence that (1) the accused was given written notice of searches, (2) written notice was posted, (3) oral notice was given in the accused's presence,[3] (4) the accused was aware of other locker searches, or (5) a government regulation[4] applied permitting such searches.

684 (1969) (discussing whether accused had "assumed the risk" that joint user of duffle bag would allow others to search); *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968) ("Wherever an individual may harbor a reasonable 'expectation of privacy,' ... he is entitled to be free from unreasonable governmental intrusion.") From these cases, it can be gleaned that an accused must at least have reason to know that the right to exclusive use of property does not exist before his expectation of a right to privacy will be considered unreasonable because others have joint access.

3. If Polster had said he gives oral notice to all dancers, or that the dancers are all reminded periodically of the potential searches and that there was no way that appellant did not know of

The State asserts that appellant's expectation of privacy was not reasonable because she should have known the lockers were subject to search by the management at any time. Polster agreed that at the "clubs [he's] worked in," the employees were told that the lockers were subject to search. He agreed that, as far as he knew, at "all the clubs that [he's] worked in, that [appellant] worked in," it is "common knowledge" that the dancer's lockers are searched on a routine basis. He said he had searched appellant's locker approximately one year prior to the incident in question at another club where they both worked previously. However, he said he did not know whether appellant had been informed that her locker at the Showtime Club was subject to search. He said he had worked at four similar establishments, but he did not say at how many clubs he had worked with appellant.

The evidence that appellant *may* have had reason to know of potential locker searches is not sufficient to overcome the evidence that appellant did exhibit a reasonable expectation of privacy in the locker. We hold the State must show that appellant *had* reason to know of the possibility of a search at the Showtime Club. That she may have had reason to know is not sufficient. *See id.,* 557 F.2d at 363. We hold that the fact that Polster considered it "common knowledge" that such searches occur is not sufficient to defeat appellant's expectation of privacy under the facts of this case. We now address whether Polster had the authority to consent[5] to the search of appellant's locker.

the possibility of locker searches, even though Polster had no independent memory of telling appellant individually, then this Court would be more likely to hold that appellant had "reason to know" in this case. However, Polster testified that he had no way of knowing whether appellant knew and that he had not told her personally.

4. *See Donato,* 269 F.Supp. at 923.

5. The State does not contend that appellant voluntarily consented to the search of her locker. Because appellant was ordered to open her locker by her manager with the police present, we hold the evidence does not establish that she freely consented to the search. *See Kolb,* 532 S.W.2d at 90. There is evidence that appellant

#### d. Polster's Consent to Search

■ Polster testified the locker was appellant's private locker. There is nothing in the record to indicate that Polster had a key to or jointly used the locker. *See Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. Therefore, we hold that Polster did not have common authority over appellant's locker and could not validly consent to the search. *See id.*

■ Because the warrantless search of appellant's locker was conducted without satisfying the consent or other exception to the warrant requirement, we hold the search violated appellant's Fourth Amendment rights. *See Matlock,* 415 U.S. at 171, 94 S.Ct. at 993. Therefore, the trial court abused its discretion in failing to grant the motion to suppress. *See Werner,* 711 S.W.2d at 643. Because we have already held that appellant's Fourth Amendment rights were violated, we need not address her comparable rights under the Texas Constitution.

#### e. Good Faith of Officers

■ The State cites *McNairy v. State,* 835 S.W.2d 101 (Tex.Crim.App.1991), for the proposition that, because Officer Reeves acted in good faith in believing that Polster had authority to consent to the search of appellant's locker, the evidence should not have been suppressed. In *McNairy,* the court held that evidence will not be excluded where police officers have made a reasonable mistake as to the extent of the owner's authority to consent to a search. In that case, the landowner agreed to allow a search of her ten acres when the police responded to a call about a car fire. The police came upon a trailer facing a different street than the landowner's home and smelled the odor of a drug lab. The court noted that it adhered to the general rule that a landlord cannot give effective consent to allow a search of a tenant's premises and that the warrantless search of the obviously separate trailer residence was not justified in that case. *See id.,* 835 S.W.2d at 105. However, the court held that the police were justified in being where they were when they smelled the odor of the drug

submitted to the claim of lawful authority. *Id.;*

lab because of the landowner's apparent consent. *Id.*

The State asserts that Officer Reeves believed in good faith that Polster could consent to the search of appellant's locker because Officer Reeves had conducted many similar searches of dancers' lockers at topless dancing establishments. However, the fact that Officer Reeves had made similar searches did not mean that he was not on notice of "ambiguous circumstances" indicating that Polster did not have joint access to and control over the locker. *See McNairy,* 835 S.W.2d at 105. In the case at bar, Officer Reeves was on notice that appellant's locker was locked and Polster apparently did not have a key. In *McNairy,* the police had no notice that all of the ten acres were not controlled by McNairy's landlord, who had consented to their presence. We reject this contention.

The search of appellant's locker violated her Fourth Amendment rights, and the trial court abused its discretion in failing to grant the motion to suppress. After reviewing the record, we cannot say that the error made no contribution to appellant's conviction or punishment. Tex.R.App.P. 81(b)(2). We sustain her second point of error.

### ADMISSION OF EVIDENCE

In her first point of error, appellant contends the trial court erred in admitting hearsay and irrelevant testimony. At the hearing on the motion to suppress, the State introduced evidence from Polster that (1) appellant's locker had been searched when she worked at other topless dancing clubs, (2) the employees of all the clubs where Polster worked were told that their lockers were subject to search, and (3) it was common knowledge that dancers' lockers are subject to search by their employers.

Assuming without deciding that the trial court properly considered this evidence, we hold that the trial court abused its discretion in failing to grant the motion to suppress. Because we sustain point of error number two and reverse and remand this case, we need not address this point of error.

*see also Frierson,* 839 S.W.2d at 851.

We reverse and remand for proceedings consistent with this opinion.