Wanda P. CHOCALLO

v.

BUREAU OF HEARINGS AND APPEALS, SSA, et al.

Civ. A. No. 77-2310.

United States District Court, E.D. Pennsylvania.

Oct. 8, 1982.

Wanda P. Chocallo, pro se.

Peter Vaira, Jr., U.S. Atty., Alexander Ewing, Jr., Asst. U.S. Atty., Philadelphia, Pa., Brook Hedge, Judith S. Scolnick and Stanley E. Alderson, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

GILES, District Judge.

### INTRODUCTION

This is an action by a former Administrative Law Judge ("ALJ") Wanda P. Chocallo ("Chocallo"), which, in the main, challenges on constitutional and statutory grounds certain federal agency actions which she claims prevented her from discharging her duties as an ALJ, interfered with her judicial independence and integrity and disqualified her from hearing certain social security cases assigned to her.

Chocallo sues all named defendants, private and governmental, as members of a conspiracy allegedly cognizable under 42 U.S.C. § 1985. She also asserts violations of the Fifth Amendment, the Privacy Act of 1974, 5 U.S.C. § 552a(g)(1), et. seq. and the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Jurisdiction is properly asserted under 28 U.S.C. §§ 1331 and 1343 (1976).

Each defendant has moved either to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment under Fed. R.Civ.P. 56. For the reasons which follow, the motions shall be granted and judgment shall be entered in favor of all defendants and against plaintiff.

### I. BACKGROUND

When bringing this action in July of 1977, plaintiff held the position of temporary ALJ assigned to the Bureau of Hearings and Appeals of the Social Security Administration, Department of Health, Education and Welfare ("DHEW"). In this capacity, she heard claimants' appeals from initial adverse determinations of social security insurance benefit eligibility, and rendered decisions. Her ALJ decisions were reviewable on the merits by the Appeals Council of the Social Security Administration. If affirmed at that level, the ALJ's opinion became the final decision of the Secretary of the Department.

Based on allegations of conduct unbecoming her office, arising largely from the incidents underlying the complaint in this court, Chocallo was subsequently removed from her temporary position as ALJ. The decision to remove her was made by the Merits Protection Board and affirmed by the United States District Court for the District of Columbia in Chocallo v. Prokof, No. 80–1053, (D.D.C., October 10, 1980). The incidents giving rise to Chocallo's complaint basically cover a one and one half year period between December, 1975 through June, 1977, and are best described as four separate series of events.

### A. The Pearl Taylor Case

Commencement of this action coincided with plaintiff's refusal to cooperate in the reassignment to another ALJ of the social security claim file of one Pearl Taylor, a claimant who sought disability status by reason of a mental condition. At all times material to this proceeding Taylor was represented by defendant Community Legal Services, Inc. ("CLS") through its employee Jonathan Stein, Esquire, and Edwin Montes, a paralegal to Stein. Prior to a February, 1977 hearing before plaintiff on the Taylor claim, Stein had filed a request with plaintiff, supported by affidavits, asking that she recuse herself as the ALJ in the matter because of alleged bias against all social security claimants who had mental problems and who were represented by CLS. The recusal motion also alleged general bias and prejudice against CLS representatives. Plaintiff refused to recuse herself at the February 15, 1977 hearing. At that time, plaintiff also interrogated the claimant over the objections of counsel, about various aspects of her attorney/client relationship, as well as claimant's involvement in the recusal motion, out of the presence of her attorney (Complaint, Exh. D. p.

9), (Complaint ¶¶ 13, 14, 15). Chocallo terminated the hearing without decision because of Stein's vigorous objections to plaintiff's actions.

Following the hearing, Stein filed a written complaint to the Appeals Council, demanding reassignment of the case for bias demonstrated at the hearing and inviting its review of the hearing transcript. (Complaint, ¶ 15, Brown Affidavit, ¶ 8). Defendant, Philip T. Brown, Chief Administrative Law Judge, received Stein's letter complaint dated February 15, 1977. He addressed an internal communication to Chocallo on March 10, 1977 advising her of his concern over the possibility that claimants were becoming victims of an obviously poor relationship between CLS and plaintiff. (Brown Affidavit ¶ 8). Speaking on behalf of the Appeals Council, Brown stated that no action would be taken until it had reviewed the transcript and tape recording of the February 1977 hearing. (Complaint, ¶ 17). On March 15, 1977, Chocallo wrote to claimant Taylor, *ex parte,* informing her that on February 17, 1977 an attempt had been made by "the Administrative Officer of this Office" to secure Taylor's files. (Complaint ¶ 16, Exhibit B).

On May 10, 1977, before the Appeals Council could act, Chocallo entered a decision and order barring both Stein and Montes from further participation in the proceedings on behalf of Taylor. (Complaint, ¶ 18, Exhibit D). In the opinion, plaintiff expressed the belief that Stein had breached his professional responsibility to the claimant by failing to disclose the recusal motion to his client.[1] Chocallo's opinion incorporated a newspaper article critical of CLS, and particularly Stein, on a subject totally unrelated to either the claimant, the merits of claim or the field of social security benefits. *Id.* Prior to rendering her decision, she had mailed a copy of the same newspaper article, *ex parte,* to Taylor. (Brown Affidavit, ¶ 9). Plaintiff's barring order required claimant to obtain substitute counsel within 30 days.

The order was issued without notice or a hearing, in the face of a statutory provision and implementing regulations which require prior notice and a hearing before a duly designated or appointed representative can be dismissed from practicing before the Social Security Administration. 42 U.S.C. § 1383(d)(2); 20 C.F.R. §§ 416.1503, 416.-1540–.1565. The barring order came to the attention of the Chief Administrative Law Judge Brown, who determined that it was contrary to law. (Brown Affidavit, ¶ 11). On his motion, the Appeals Council issued an order dated June 9, 1977 removing the Taylor case to the Council pursuant to 20 C.F.R. § 416.1459. The case was then remanded to the Regional Chief Administrative Law Judge for reassignment to another ALJ.

A copy of the Appeals Council order was served on plaintiff on June 10, 1977 by defendant Sol Gitman, Assistant Regional Chief Judge. Defendant James C. Lightfoot, Administrative Law Judge in charge of the Philadelphia Office of the Bureau of Hearings and Appeals, and defendant John Ennis, another ALJ, were also present. Gitman made an oral demand upon plaintiff to return the file but she responded that she did not have it in her office and even if she did, she would not surrender it to him (Gitman Affidavit, ¶ 15). Later, a written demand was made on the same day, to which plaintiff made no response. (Gitman Affidavit, ¶ 16). Her refusal was then reported to Chief ALJ Brown.

Plaintiff ignored the statutory and regulatory authority for the case reassignment action, contending that it was violative of her rights as a presiding judge and as protector of the interests of the claimant Taylor and the public. (Complaint, ¶¶ 26, 27, 28). Following receipt of the Appeals Council Order, plaintiff contacted Taylor by telephone. The claimant had already been informed of the removal action and was under directive to obtain another represent-

---

1. The Code of Professional Responsibility, adopted by the American Bar Association, Ethical Considerations EC 7–9 and EC 7–11 support

the use of discretion by an attorney not to disclose to a client information such as a recusal motion.

ative. During the telephone conversation, Taylor told Chocallo that she did not want another ALJ. Plaintiff retained control of the file and scheduled a further hearing on June 13, 1977. Pursuant to a June 9, 1977 order issued by Chocallo, claimant appeared without her CLS representatives. They had advised her not to appear since the case had been taken from Chocallo and was being reassigned. Taylor appeared with her sister and minister. One of plaintiff's allegations is that CLS failed or refused to represent claimant at this unauthorized hearing. (Complaint ¶¶ 19–24).

On June 21, 1977, defendants Jack H. Roseman and John W. Ennis, both ALJ's, and defendant Claire R. Kuriger, entered Chocallo's locked office in her absence and made a visual inspection for purposes of locating and obtaining the Taylor files. They were unsuccessful. Chocallo retained the files and proceeded to "decide" the claimant's case in her favor, thus mooting a mandamus suit filed in this court by the government to compel her to return the files. (*United States of America v. Wanda P. Chocallo,* No. 77–2437, dismissed as moot). In keeping with the routine practice of relinquishing files in decided cases, she turned the Taylor file over *after* making the decision. *See United States of America v. Wanda P. Chocallo,* E.D.Pa., Civil Action No. 77–2437.

These actions were the primary basis for initiation by the agency of removal charges against plaintiff on June 20, 1977 (Trachtenberg Affidavit ¶ 7).

### B. *The Coleman Case*

Plaintiff's second group of allegations arise out of the December, 1975 social security disability hearing of defendant John C. Coleman, a 74 year old blind man whose case was assigned to Chocallo. Chocallo failed to appear at the Coleman hearing allegedly due to illness. His counsel, de-

fendant Linda Bernstein, Esquire, wrote to Chocallo expressing her concern at Chocallo's non-appearance, particularly in light of the resulting inconvenience to Coleman. At the next scheduled hearing, Chocallo accused Coleman of dishonesty and Bernstein of unethical and unprofessional conduct. On December 31, 1975, Bernstein complained in writing to the Chief ALJ of what she regarded as vituperative conduct by Chocallo. As a result of these complaints, Chocallo was counselled by Lightfoot, in his capacity as Regional Chief ALJ, to avoid such confrontations with counsel, which might result in claims of partiality. Lightfoot suggested that plaintiff consider voluntarily recusing herself from the Coleman case. Plaintiff refused to withdraw. The Coleman case was not reassigned, despite the complaints from Bernstein, on the stated presumption that plaintiff could conduct a fair, impartial hearing and render a just decision. (Complaint, ¶¶ 33 A–Q, X–2).

In late January, May, and July, of 1976, Chocallo attempted to schedule supplementary hearings in the Coleman matter. Neither Bernstein nor Coleman appeared, believing that the matter had been concluded on the merits at the December, 1976 hearing.[2]

In September, 1976 nearly nine months after the hearing on the merits, Coleman's attorney Bernstein complained in writing to Chief ALJ Brown about what she considered an inordinate delay in the issuance of a decision. (Brown Affidavit, ¶ 5). Brown gave plaintiff a copy of the Bernstein letter and asked her when the decision would be rendered, advising her that if a date were not given, the Appeals Council would have to review the case and make a decision. Plaintiff promised a decision by the first week in October, 1976. As of November 1, 1976, no decision had been made and Brown requested the Appeals

---

**2.** In early February, 1976, for the purpose of defending a federal class action brought against the Secretary of DHEW, a request was made for the Coleman file by the Office of General Counsel of DHEW through the Assistant Commissioner of the Bureau of Supplemental Security Income. (Gitman Affidavit, ¶¶ 6, 8, At-

tachment # 2). All case files involved in that lawsuit had been obtained except the Coleman file which was in the possession of, or under the control of, plaintiff. Despite the stated need of the General Counsel's Office for the file, she refused to surrender it. *Id.*

Council to remove and consider the case because of the delay. On November 2, 1976, the Appeals Council informed Brown that a decision adverse to Coleman had been rendered on October 29, 1976. On June 15, 1977, the Appeals Council reversed and remanded because of demonstrated hostility against the claimant and attorney through the hearing process and the decision itself. The case was then reassigned to another ALJ for decision.

In September, 1977, ostensibly acting as a self-appointed private attorney general endeavoring to attack the validity of the Appeals Council's order of June 15, 1977, Chocallo filed a first amended complaint in this court to add as defendants the Secretary of DHEW and the claimant Coleman.

### C. Denial of Promotion and Lack of Productivity

On February 29, 1976, Chocallo communicated with David Matthews of DHEW requesting a full investigation into defendants' conduct in the Coleman case. By letter dated April 9, 1976, defendant Robert L. Trachtenberg, Director of the Bureau of Hearings and Appeals, advised Chocallo that he planned to recommend instituting an adverse action against her, and that he felt it improper to reply to her letter which had been referred to him by Matthews. Because of the contemplated adverse action, Trachtenberg decided to withhold Chocallo's promotion which would ordinarily have been effective by operation of law on April 11, 1976. (Trachtenberg Affidavit, ¶ 4). On May 25, 1976, Chocallo reported Trachtenberg's actions to the Civil Service Commission which ultimately directed Trachtenberg to initiate retroactive corrective action. The action was taken and Chocallo received a retroactive promotion and backpay. Subsequently, on April 29, 1977, Chocallo was informed by Brown that her production was unacceptably low, and was in-

structed to increase her output within sixty days. Apparently, the "productivity" issue had been raised previously in January, 1976 by Gitman due to a "multitude of complaints" which were filed by persons who had appeared before Chocallo and who complained of delayed decisions. (Gitman Affidavit, ¶ 10, 11). Ultimately, on May 31, 1977, Gitman addressed a letter to Chocallo requesting her to inform him on a weekly basis of the number of case dispositions. (Complaint ¶ 37). Chocallo asserts that if her productivity was low, it was because she was denied an adequate support staff. (Complaint, ¶ 34).

### D. Denial of Access to Personnel File

Finally, plaintiff alleges that her rights under the Privacy Act were violated by defendants Trachtenberg, Gitman and Lightfoot who delayed and/or refused to furnish her copies of all records and data concerning her which were in the Bureau's possession. Further, she claims that her Privacy Act rights were violated since defendants collected irrelevant and damaging information, in particular, complaints filed by attorneys and claimants concerning her performance which were disseminated without her knowledge. Based on the above events, plaintiff sues the following group of defendants.

### II. THE COMMUNITY LEGAL SERVICES ("CLS") DEFENDANTS

Chocallo claims that various attorneys affiliated with CLS, who represented claimants appearing before her, conspired with the federal defendants to violate her constitutional and statutory rights. The CLS defendants include Linda Bernstein, Esquire, Marjorie Janoski, Esquire, Bartholomew Poindexter, Esquire, Richard Weishaupt, Esquire, and Deborah Kooperman, Eileen Wood and Marilyn Davis Weiler, CLS paralegals.[3] It is unclear what constitutional

---

**3.** Each CLS defendant is charged with: (1) making "ex parte" complaints to Chocallo's superiors concerning her conduct as a hearing examiner, (Complaint ¶ 24, 27, 30, 31); (2) conspiring to prevent her from discharging her duties as a judge (Complaint, ¶ 12) and (3) being "unruly" and "offensive" at hearing be-

fore Chocallo (Complaint, ¶ 14). Based on these factual representations, Chocallo claims that her rights under the due process clause of the Fifth Amendment and under 42 U.S.C. § 1985 were violated by the CLS defendants. Chocallo also alleges causes of action under the Administrative Procedure Act, 5 U.S.C. § 551,

rights were allegedly violated by the CLS defendants. Chocallo appears to claim that she had a constitutional right to be an "independent judge," to continue to hold office (Complaint ¶ 40, 48), and not to be "unlawfully deprived of her liberty to use the powers of her mind, judgment and experience..." (Complaint ¶ 48). In addition, Chocallo claims that the public's rights and the rights of claimants in Social Security appeals were violated. (Complaint, ¶ 41, 43). Based on these allegations, the CLS defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed.R. Civ.P. 12(b)(6). Even accepting all of the well-pleaded facts in plaintiff's complaint as true, I find that the CLS defendants' motion must be granted. Chocallo claims relief under all three sections of 42 U.S.C. § 1985 (1976).[4]

I address these claims in reverse order.

### A. *42 U.S.C. § 1985(3)*

■ To state a cause of action under § 1985(3), the plaintiff must show (1) that a federally secured right has been invaded by

---

*et seq.*; the Social Security Act, 42 U.S.C. § 301, *et seq.* and the Privacy Act, 5 U.S.C. § 552a. Fairly read, however, the complaint does not allege that the CLS defendants violated any of these provisions.

**4.** 42 U.S.C. § 1985 provides:
(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder or impede him in the discharge of his official duties;
(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, ...; or if two or more persons conspire for the purpose of

the defendants, (2) that the defendants conspired to deprive the plaintiff of her rights, and (3) that the defendants' actions were motivated by a "class-based, invidiously discriminatory animus...." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). *Waits v. McGowan,* 516 F.2d 203, 208–09 (3d Cir. 1975); *See also Robinson v. McCorkle,* 462 F.2d 111, 113 (3d Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Local No. 1 (ACA) v. I.B.T., C., W. & H.,* 419 F.Supp. 263, 275–77 (E.D.Pa.1976). " 'Section [1985(3)] provides no substantive right itself; it merely provides a remedy for violation of rights it designates.' " *Marino v. Bowers,* 657 F.2d 1363, 1371 (3d Cir. 1981), (quoting *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).

■ With respect to the claim of constitutional violations, plaintiff alleges only that her rights to due process and equal protection under the Fifth Amendment

---

impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;
(3) If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

were infringed by the actions of the CLS defendants. However, plaintiff alleges no facts that would establish that the CLS defendants violated these rights. Although she alleges that the CLS defendants were obstructive, rude and offensive, that they sought to disqualify her from sitting in certain cases, and that they failed to properly represent certain clients in cases before her, none of these allegations implicates plaintiff's constitutional rights. As a judge, she has no constitutional right to be free from criticism, disqualification, or even ridicule. *Cf. In re Dellinger,* 461 F.2d 389, 400 (7th Cir. 1972). (Attorneys given latitude as vigorous advocates and mere disrespect or insult not necessarily punishable as contempt.) Quite to the contrary, the actions complained of are themselves protected by the First and Sixth Amendments. The CLS defendants are entitled under the Constitution and federal law to criticize plaintiff as a judge and federal official. *See, e.g., Wood v. Georgia,* 370 U.S. 375, 388–91, 82 S.Ct. 1364, 1371–1373, 8 L.Ed.2d 569 (1962); *In re Sawyer,* 360 U.S. 622, 632–33, 79 S.Ct. 1376, 1381, 3 L.Ed.2d 1473 (1959); *In re Oliver,* 452 F.2d 111, 114–15 (7th Cir. 1971). *See also* Canon 7, ABA Code of Professional Responsibility.

■■■ Moreover, in particular cases, where the assigned judge may be biased, prejudiced, or predisposed as to the outcome, the attorney may have an obligation to file a motion for disqualification. Indeed, the regulations which control the hearing procedures involving administrative law judges specifically provide for disqualification of presiding officers. 20 C.F.R. § 416.1430. Plaintiff has no constitutional right to be exempted from this provision.

■■■ Finally, in the course of representing their clients, CLS attorneys are entitled to make a wide range of tactical and legal decisions, and only the client, and not a third party such as any administrative law judge, has standing to complain that these decisions and actions violate the constitutional rights of the client. *See, e.g., O'Malley v. Brierley,* 477 F.2d 785, 789 (3d Cir. 1973) (litigant may assert only his own constitutional rights or immunities).

The Supreme Court has repeatedly emphasized the importance of protecting the independence of attorneys and ensuring zealous advocacy on behalf of clients under our adversary system of justice. *See, e.g., In re Sawyer,* 360 U.S. 622, 635–36, 79 S.Ct. 1376, 1382–1383, 3 L.Ed.2d 1473 (1959). *See also In re Dellinger,* 461 F.2d at 400. These principles must be followed with special care with respect to legal service organizations where, because of funding and other considerations, there is a high risk of interference and control by the government or the courts. Fairly read, plaintiff's requests for relief, if granted, would seriously encroach upon the protected activities of the CLS defendants.

■■■ It is also clear that plaintiff's complaint fails to satisfy the requirement that defendants' actions be motivated by a class-based, discriminatory animus. Such allegations must allege discrimination against a well defined class, and discrimination that "(1) affects a traditionally disadvantaged group (*e.g.,* 'suspect' classification); (2) is irrational; or (3) unnecessarily burdens plaintiff's exercise of a 'fundamental' right." *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 156 (E.D.Pa.1977). Plaintiff fails to satisfy any of these standards.

Plaintiff does not allege discrimination based on race, sex, alienage, or any other suspect classification. Nor does she claim discrimination against administrative law judges as a class. Thus, she fails to state a claim under § 1985(3).

### B. *42 U.S.C. § 1985(2)*

■■ The Third Circuit construes section 1985(2) as subdivided into two parts—one part preceding and the other following the semi-colon. *Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir. 1976). The second half of section 1985(2), proscribing obstructions of justice having as their object the denial of equal protection of the laws, *Haefner v. County of Lancaster,* 520 F.Supp. 131, 134 (E.D.Pa.1981), has been construed to require the same class-based, invidiously discriminatory animus as that which has been re-

quired under § 1985(3). *Brawer,* 535 F.2d at 840. Accordingly, for the reasons stated above, plaintiff's claim under this section must also be dismissed.

■ The first clause of subsection (2) is aimed at conspiracies to intimidate or pressure witnesses, parties and jurors in the performance of their duties in any court of the United States. *Brawer,* 535 F.2d at 840. This section does not provide judges or others involved in the judicial process, who are not specified in the statute, with any protection. Plaintiff, as a judge, does not have standing under this statute to raise the constitutional claims of litigants who appear before her. *O'Malley v. Brierley,* 477 F.2d at 789 (one cannot sue for deprivation of another's civil rights.)

### C. *Section 1985(1)*

■ Section 1985(1) has not been definitively construed by the Third Circuit. However, in a carefully considered opinion, with which I am in agreement, the Seventh Circuit has construed it to consist of four component parts. *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1336 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Parts one and two proscribe conspiracies to prevent federal officers, by the use of "force, intimidation, or threat" from holding office or discharging their duties. Also proscribed are conspiracies to induce federal officers to leave a place where their duties must be performed. *Stern,* 547 F.2d at 1336. Here, plaintiff alleges no facts whatsoever to establish conduct by CLS defendants which rises to the level of force, intimidation or threats. The CLS defendants have, as outlined above, merely exercised their statutory and constitutional responsibilities as attorneys and paralegals. Thus, these portions of section 1985(1) are not implicated by the alleged conduct. Parts three and four, however, proscribe conduct which falls short of force, intimidation or threats. Conspiracies to injure a federal officer in his person or property on account of, or during the lawful discharge of his duties are not permitted. Also forbidden are conspiracies to injure his

property in order to impede him in the discharge of his duties. Plaintiff presumably claims that the alleged conduct falls within these proscriptions. However, as in *Stern,* the gravamen of plaintiff's complaint against the CLS defendants is that they interferred with the discharge of plaintiff's duties by overzealous advocacy and by filing complaints with her supervisors about the manner in which she performed her duties. I find, as did the court in *Stern,* that section 1985(1) must be read narrowly so as not to implicate these constitutionally protected activities. In *Stern,* the court found that plaintiff, an IRS agent who had sued a corporation and its officers for filing complaints with plaintiff's superiors concerning the performance of duties during an audit, did not state a claim under § 1985(1). It found such activity to be protected by the First Amendment since "public criticism of governmental policy and those responsible for government operations is at the very core of the constitutionally protected free speech area," *Stern,* 547 F.2d at 1342, and "presenting complaints to responsible government officials about the conduct of their subordinates with whom the complainer has had official dealings is analogously central to the protections of the right to petition." *Id.* at 1342–43. The court found it irrelevant that the exercise of this right may cause professional injury to the official in question. Nor was it relevant that the complainant may be aware of, and desire, such injury to occur, at least when the complaints are lodged through the proper and established channels. *Id.* at 1343. Likewise, in this case, the CLS defendants have merely exercised their statutory and constitutional responsibilities as attorneys and paralegals, as outlined above. They have not, as a result, deprived plaintiff of any federally secured right under section 1985(1).

### D. *The Fifth Amendment*

■ It appears that any authority for a direct cause of action under the Fifth Amendment derives from *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999,

29 L.Ed.2d 619 (1971). However, two fundamental requirements must be satisfied before a *Bivens* cause of action can be stated. First, the plaintiff must be deprived of a constitutionally protected right under the specific Amendment; second, the defendants' actions must have been taken under color of law. *Bivens,* 403 U.S. at 392–397, 91 S.Ct. at 2002–2005. As indicated, there is no showing that the CLS defendants did anything illegal to plaintiff. Consequently, they have deprived her of no constitutionally protected right and her claim directly under the Fifth Amendment must also fail.

## III. DEFENDANT JOHN C. COLEMAN, SOCIAL SECURITY CLAIMANT

■ Plaintiff filed an amended complaint on August 15, 1977 (Docket Entry # 5) wherein John C. Coleman is named as a defendant. In that complaint, plaintiff protests an Order of the Appeals Council removing Coleman's case from her and reassigning it to another administrative law judge. Coleman moved to dismiss, asserting that the complaint fails to state a claim against him. I agree. A review of the amended complaint fails to disclose any allegation as to any actions taken by Coleman, acting independently of his attorney, that were directed against plaintiff. To the extent that Coleman is involved, it is only through his attorney against whom the action has been dismissed for failure to state a claim. Thus, the action against Coleman, the client, must be dismissed for the same reasons.

## IV. DEFENDANT, JOSEPH CALIFANO, FORMER SECRETARY OF DHEW

In the same August 15, 1977 amended complaint, plaintiff sued the Secretary of DHEW complaining that the Appeals Council's removal and remand order in the Coleman case was contrary to the applicable provisions of the Administrative Procedure Act, and in violation of rights guaranteed under the Fifth Amendment. Although not stated, it is apparent that Califano was sued in his official capacity. Plaintiff requested this court to direct the Secretary to overrule the Appeals Council and to adopt, as his own, her decision denying Coleman benefits. Califano moved to dismiss plaintiff's complaint for failure to state a claim against him. I agree that dismissal is proper because plaintiff lacks standing to challenge the action taken by the Appeals Council. To have standing, plaintiff must demonstrate both that (1) "the challenged action has caused [her] injury in fact, economic or otherwise," and (2) that the interest sought to be protected is "arguably within the zone of interests to be protected by or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organization, Inc. v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–831, 25 L.Ed.2d 184 (1970). Plaintiff completely fails to establish either element.

■ Plaintiff cannot show that she was deprived of any legally protected interest by the Appeals Council Order of June 9, 1977, according Coleman a new hearing before another administrative law judge. As a presiding officer assigned to determine the eligibility of a claimant for supplemental social security benefits, the plaintiff had a statutory obligation to decide, without prejudice, the merits of the case before her. 5 U.S.C. § 556(a). Any partiality on the part of the presiding officer in a pending matter requires disqualification. Social Security Administration regulations, 20 C.F.R. § 416.1430 provide in pertinent part:

> *§ 416.1430 Disqualification of pending officer.*
>
> No presiding officer shall conduct a hearing in a case in which he is prejudiced or partial with respect to any party, *or where he has any interest in the matter pending for decision before him.*
> (Emphasis added).

Plaintiff, therefore, could not properly have any interest in the claim before her. Consequently, as a matter of law, plaintiff has no interest in the outcome of Coleman's claim.

Even if she did have standing, plaintiff has no basis upon which to challenge the

propriety of the Appeals Council's action in the *Coleman* case. Her complaint is that Califano, through the Appeals Council, lacked authority to vacate her decision in the *Coleman* case and remand it to another ALJ because (1) it is illegally constituted as a review body, and (2) it was not authorized by statute or regulation to remove the case from her or to reassign it to another ALJ. The former argument was raised in plaintiff's removal proceedings held before Judge McCarthy. After conducting a full evidentiary hearing, Judge McCarthy concluded that this argument was meritless.[5]

Judge McCarthy's findings were affirmed by the Merit System Protections Board (MSPB), *In re Wanda Chocallo,* MSPB Memorandum Opinion and Order dated March 20, 1980, which was in turn affirmed by the United States District Court. *Chocallo v. Prokop,* C.A. No. 80–1053 (D.D.C. October 10, 1980).

Collateral estoppel, thus, applies to bar plaintiff's relitigation of this issue. "Once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive on subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). In addition, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the issue. *Id.* Collateral estoppel also applies to administrative proceedings where an administrative agency acts in a judicial capacity to resolve disputed issues

of fact which the parties have had a full opportunity to litigate. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Since a full evidentiary hearing was held before Judge McCarthy on the issue of whether the Appeals Council is a legally constituted review board, it is appropriate to apply collateral estoppel to this issue.[6]

Plaintiff's second argument that Califano, through the Appeals Council, was not authorized by statute or regulation to remove the Coleman case, is without merit. Under 20 C.F.R. 416.1461 a party to a hearing may request review by the Appeals Council of a decision issued by an ALJ. After review, the Appeals Council may affirm, modify, reverse or remand the case to a presiding officer. 20 C.F.R. § 416.1467–68. These regulations were strictly followed in Coleman's case. On November 19, 1977 he requested review, which was granted. The Council found that he had been denied a fair hearing and it accordingly vacated and remanded the case to another ALJ. Thus, the Council's order in the Coleman case was consistent with the applicable regulations.

For these reasons, plaintiff's complaint against former Secretary Califano must be dismissed.

## V. FEDERAL DEFENDANTS, JOHN W. ENNIS, JACK ROSEMAN AND CLAIRE KURIGER

In a second amended complaint filed in September, 1977, plaintiff named as

---

**5.** Judge McCarthy found unpersuasive Chocallo's argument that sections 205(g) and (h) of the SSA, 42 U.S.C. 405(g) and (h), prohibit review of a "presiding judges' " decision by any person, agency or tribunal except the federal district court. To the contrary, he found that these sections refer only to the decisions of the "Secretary" and contain no mention of a "presiding judges" decision. He found that plaintiff's assumption that she is "the Secretary" since an ALJ has delegated authority to render decisions, ignores the fact that the Appeals Council also has delegated authority to review these decisions. *See* 20 C.F.R. § 416.1459–61 (regulation assigning review functions to Council). He found that section 205 of the SSA, 42 U.S.C. § 405, does not preclude a delegation of authority to an ALJ to make findings and a

decision, subject to review by an appeals council before these decisions become final and binding.

**6.** Plaintiff argues that the defense of collateral estoppel was waived since it was not raised until the federal defendants filed renewed motions to dismiss raising the collateral estoppel issue. The collateral estoppel issue was briefed pursuant to my order. I do not find the waiver argument persuasive. Plaintiff's argument that all defenses must be asserted initially or be deemed waived misconstrues Fed.R.Civ.P. 12(b) which provides that certain enumerated defenses, not including collateral estoppel, must be raised in the *responsive pleading.*

additional defendants ALJ's John W. Ennis and Jack Roseman, the Bureau of Hearing and Appeals, SSA, and Claire Kuriger, secretary to original defendant James C. Lightfoot, who was the ALJ in charge of the Philadelphia office through which plaintiff received her case assignments. These three defendants have been sued in both their official and individual capacities. Chocallo charges violations of her Fourth Amendment rights by virtue of their search of her office during her absence on June 21, 1977 to secure the Taylor files and tapes. All three defendants move to dismiss. In view of the affidavits submitted by both sides, the court shall treat defendants' motion to dismiss as a motion for summary judgment. Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted when there are no genuine issues of material fact and judgment as a matter of law is appropriate. Applying these standards to the undisputed facts as set forth below, I find that summary judgment must be granted in favor of defendants Kuriger, Ennis and Roseman.

Pursuant to the Appeals Council order of June 9, 1977, the Taylor matter was remanded to the Philadelphia Regional Office with direction to reassign the case to another ALJ. Acting on instructions from his superiors, the Assistant Regional Chief ALJ for Region III (Philadelphia), Sol Gitman, served on plaintiff copies of the order and made an oral demand for the Taylor file. (Gitman Affidavit, ¶ 15). Plaintiff does not deny that she told Gitman, and defendants Lightfoot and Ennis who were also present, that she did not have the file and that even if she did, she would not surrender it. (Id.; Plaintiff's Reply to Gitman's Affidavit, ¶ 15). Plaintiff admits that later on the same morning Gitman served her with a written memorandum directing her to surrender the Taylor file pursuant to the order of the Appeals Council and that she did not comply.

On June 21, 1977, eleven days later, the Taylor file still had not been turned over by plaintiff nor had its whereabouts been made known. In the absence of Lightfoot, who was then on vacation, Ennis was Acting Administrative Law Judge in charge of the Philadelphia office. On that day he had been instructed orally by Gitman to obtain the Taylor file from the locked office of plaintiff. (Ennis Affidavit, ¶ 5). Plaintiff had been out of the Philadelphia office since June 14, 1977, and her whereabouts were not known to Gitman. She remained absent through June 23, 1977. Acting on Gitman's directive, Ennis proceeded to plaintiff's office to obtain the file. He was accompanied by defendant Roseman, ALJ Morris Chernock, and defendant Kuriger. Also present outside the office was Nancy Parkinson, plaintiff's hearing assistant. (Ennis Affidavit, ¶ 6).

According to Ennis, he obtained the key to the office from Kuriger, the Regional Chief ALJ's secretary, who kept office keys, then unlocked and opened the door in the presence of the above named witnesses. Ennis gave Kuriger instructions to enter the office and to make a visual inspection of plaintiff's desk and table for the Taylor file, but not to open any drawers or file cabinets. While the witnesses remained outside the open door and observed, Kuriger entered and made a visual inspection. According to Ennis, she followed these directions to the letter, spending two or three minutes looking but not locating the file, and then exiting the office without touching, disturbing, or removing any item from the office. Ennis then closed and locked the door in the presence of the same witnesses.

Plaintiff alleges in her reply that her secretary Parkinson told her that her office was broken into while plaintiff was out of the office and that a new lockset had been installed. Plaintiff's Reply Affidavit, ¶ 6. The statement attributed to Parkinson is hearsay, inadmissible under any exception to that rule and must, therefore, be disregarded. Notably, there is no affidavit from Parkinson. Plaintiff's assertion that her office was in a privately owned building is not material since her office space was government owned or leased. Neither do I find it material that she may have installed her own lock on the government door.

There is a strong argument that once installed, it became the property of the government as lessee. In any event, these allegations obscure the central inquiry which is whether plaintiff had a "reasonable expectation of privacy," which was violated by defendants' conduct. While there are clearly circumstances under which an individual may have a reasonable expectation of privacy in her office and its contents, *Gillard v. Schmidt,* 579 F.2d 825, 829 fn. 1 (3d Cir. 1978), such circumstances are not present here. Under the exceptional facts of this case, plaintiff could have no reasonable expectation of freedom from a perusal of government office space to ascertain the whereabouts of a file which she admittedly possessed but persistently refused to relinquish. (*See* Plaintiff's Reply Affidavit ¶ 6). *United States v. Nasser,* 476 F.2d 1111, 1123 (7th Cir. 1973) (work related warrantless search upheld).[7] Without question, the sole purpose of the search here was work related and reasonably foreseeable by plaintiff who had refused the active efforts of her supervisors to locate and recover the Taylor file, which was government property.[8] By the June 9, 1977 order of the Appeals Council, the *Taylor* case had been remanded with instructions to reassign it. Chocallo admittedly refused to turn over the file and at the time of the search had improperly retained the file for eleven days. Under these circumstances, I do not find that defendants' actions in entering and searching her office to obtain the *Taylor* file amounted to a violation of plaintiff's Fourth Amendment rights. Accordingly, the actions against defendants Ennis, Roseman and Kuriger must be dismissed for failure to state a claim.

---

**7.** The Third Circuit's decision in *Gillard v. Schmidt,* 579 F.2d 825 (3d Cir. 1978) is not contrary to the rule set forth in *Nasser* that a public employer may search an employee's office when the search is "work-related." In *Gillard,* a Fourth Amendment violation was held to be alleged where a school board member made a search of guidance counselor's desk containing sensitive student records, since the counselor had a reasonable expectation of privacy. *Id.* at 828. However, the court specifically declined to consider the force of precedents such as *Nasser,* since there was no evi-

## VI. DEFENDANT BUREAU OF HEARING AND APPEALS

▇▇ To the extent that plaintiff sues the Bureau of Hearing and Appeals claiming damage liability, the doctrine of sovereign immunity applies to bar her claim. Such a suit constitutes an action against the United States as to which it has not waived its immunity. *See City of Whittier v. United States Department of Justice,* 598 F.2d 561, 562 (9th Cir. 1979); *Midwest Growers Co-op Corp. v. Kirkemo,* 533 F.2d 455, 465 (9th Cir. 1976) (quoting *Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952).)

## VII. FEDERAL DEFENDANTS, TRACHTENBERG, GITMAN, LIGHTFOOT, BROWN

Chocallo sues Robert L. Trachtenberg, Director of the Bureau of Hearings and Appeals, Philip T. Brown, Chief ALJ, Sol R. Gitman, Regional Chief ALJ, James C. Lightfoot, ALJ in charge of the Philadelphia office and James B. Cardwell, Commissioner of the Social Security Administration, alleging violations of 42 U.S.C. § 1985, the Fifth Amendment, Administrative Procedure Act (5 U.S.C. § 551 *et seq.*); the Social Security Act, as amended, 42 U.S.C. § 405(g) and (h), and the Privacy Act of 1974, 5 U.S.C. § 552A(g)(1). As against these defendants, Chocallo claims a conspiracy *inter se* and with the CLS defendants to destroy her integrity, efficacy and independence as an ALJ. Because matters outside the pleadings have been submitted by both parties, the motions to dismiss will be

---

dence that the employer in *Gillard* was seeking to recover government property. *Id.* at 829 n. 1. Here, by contrast, defendants sought merely to obtain a file which was being improperly retained by Chocallo for official use.

**8.** Plaintiff's refusal to relinquish the file led to a mandamus action against her. *United States v. Wanda P. Chocallo,* E.D.Pa. Civil Action No. 77-2437. It is obvious why plaintiff refused to give up the file on June 10 and thereafter. She had scheduled and was intent on holding an unauthorized hearing in the Taylor case.

treated as motions for summary judgment. The various claims as to these defendants are set forth separately.

## A. *42 U.S.C. § 1985 and Fifth Amendment*

Basically, plaintiff asserts that defendants Gitman, Brown, Trachtenberg and Lightfoot violated her rights under 42 U.S.C. § 1985 and the Fifth Amendment by contributing to and participating in the events leading to the removal and remand of the *Taylor* and *Coleman* cases. Defendant Brown allegedly: (1) received and acted upon Stein's letter requesting removal in the *Taylor* case; (2) received and acted upon Bernstein's letter complaining of Chocallo's conduct of the *Coleman* case; (3) wrote to Chocallo on March 10, 1977 asking her to resolve her differences with Stein and petitioned the Appeals Council to vacate the *Taylor* order and remand the case for reassignment; (4) wrote to Chocallo informing her of his intention to have her decision in *Coleman* reviewed and ultimately petitioned the Appeals Council to remand the *Coleman* decision; and (5) wrote to Chocallo asking her to increase her production.

As to defendant Gitman, the complaint alleges that he (1) received Stein's letter in the *Taylor* case; (2) participated in obtaining the *Taylor* files from Chocallo; (3) solicited complaints about plaintiff from CLS attorneys; (4) met with Chocallo to discuss her productivity and her conduct of the *Coleman* case; and (5) asked Chocallo to inform him of her case dispositions on a weekly basis.

Defendant Lightfoot allegedly: (1) participated in obtaining the *Taylor* files; (2) solicited complaints from CLS attorneys; (3) received and acted upon Bernstein's letters regarding plaintiff's conduct of the *Coleman* case; and (4) did not assign her cases from January, 1976 to October, 1976 and from February, 1977 on, due to her low productivity.

Defendant Trachtenberg allegedly: (1) received Gitman's letter requesting her removal in the *Taylor* case; (2) ordered Gitman and Lightfoot to obtain the *Taylor*

file; (3) received her complaints in the *Coleman* case; (4) attached her low productivity; (5) instituted the adverse action seeking her removal; and (6) improperly denied her a promotion.

Assuming arguendo that the conduct alleged against each defendant violates a cognizable interest under either 42 U.S.C. § 1985 or the Fifth Amendment, each of these defendants is entitled to immunity.

### 1. *Absolute Immunity*

All of the claims asserted against defendants Gitman, Brown and Lightfoot pursuant to § 1985 and the Fifth Amendment arise from actions undertaken in their capacity as Administrative Law Judges. These defendants properly assert that they are immune from suit for monetary damages under the Fifth Amendment. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Butz,* the Supreme Court held that persons performing adjudicatory functions within a federal agency are entitled to absolute immunity from damage liability for their judicial acts. *Id.* at 514, 98 S.Ct. at 2914. This immunity applies as well to suits brought under the Civil Rights Act, here section 1985. *See Ross v. Meagan,* 638 F.2d 646, 649 n. 2 (3d Cir. 1980). In the parallel context of absolute immunity for judges, the Supreme Court has stated that the essential inquiry in determining whether such immunity attaches is whether, at the time the judge took the challenged judicial action, he had jurisdiction over the subject matter before him. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–1105, 55 L.Ed.2d 331 (1978). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously or was in excess of his authority, rather, he will be subject to liability only when he acted in the 'clear absence of all jurisdiction.' " *Id.* at 356–57, 98 S.Ct. at 1104–1105 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872)).

 It is clear that none of the judicial acts complained of were done "in the clear absence of all jurisdiction." Plain-

tiff's averments relate solely to actions regarding case assignments, the removal and remand of cases, and the supervision of plaintiff. All of these actions are encompassed within the description of defendants' responsibilities and duties, as set forth in their affidavits. A second pertinent inquiry is whether defendants' acts were "judicial acts," so that they fall within the zone of protected activity. Whether an act is a judicial act depends upon (1) whether it is a function normally performed by a judge and (2) whether the parties dealt with the judge in their judicial capacity. *Sparkman,* 435 U.S. at 361–62, 98 S.Ct. at 1107. The actions alleged here are all functions normally performed by the Chief Administrative Law Judge, the Regional Administrative Law Judge and the Administrative Law Judge in charge of the Philadelphia office, as evidenced by their respective position descriptions. Further, it is clear that plaintiff dealt with these defendants at all times in their judicial capacities. Under the controlling cases, they are immune from liability for damages under § 1985 and the Fifth Amendment.[9]

### 2. Qualified Immunity

As to defendant Trachtenberg, the Director of the Bureau of Hearings and Appeals, a defense of qualified immunity applies to bar plaintiff's claims for damages arising out of the performance of his duties. At all relevant times, Trachtenberg was acting within the scope of his authorized duties as Director. In that capacity, he was a public official who was charged with the performance of duties involving the exercise of discretion. As such, he is entitled to a qualified immunity from liability in a suit for damages arising from unconstitutional action. *See Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Supreme Court has recently held that to be entitled

to this immunity, a government official must establish that he acted in good faith. *Harlow v. Fitzgerald,* —— U.S. at ——, 102 S.Ct. at 2735. That is, his conduct must not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at ——, 102 S.Ct. at 2735. In *Harlow v. Fitzgerald,* the court specifically found that "reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.* at ——, 102 S.Ct. at 2738. Thus, if the affidavit of Trachtenberg establishes that he acted in good faith, in accordance with the above definition, he is entitled to assert the defense of qualified immunity.

■ One of plaintiff's principal allegations against Trachtenberg is that he recommended removal action be undertaken against her. Plaintiff contends this action was initiated by Trachtenberg in bad faith. While it is true that Trachtenberg did recommend adverse action, in view of the final judicial decision affirming the removal action, it cannot be said that the recommendation was without some legitimate foundation or justification. Nor can it be said that Trachtenberg acted in violation of plaintiff's clearly established statutory or constitutional rights.

Plaintiff's other major contention is that Trachtenberg deliberately and intentionally deprived her of a promotion for a period of approximately five months. Plaintiff had been appointed as an Attorney Examiner or Hearing Examiner SSI GS–905, and not an administrative law judge under 5 U.S.C. § 3105. An Act of Congress, P.L. 94–202 approved January 2, 1976, authorized the Secretary of DHEW to treat hearing examiners as temporary administrative law judges until December 31, 1978. Under this

---

9. While the absolute immunity doctrine may not extend to suits for injunctive relief, without deciding this issue, I find that plaintiff's claims for injunctive relief have been rendered moot by her removal from office, which the United

States District Court for the District of Columbia affirmed in *Chocallo v. Prokop,* Civil Action No. 80–1053 (D.D.C. October 10, 1980). *See DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

Act, the examiners could hear social security claims under Titles II, XVI and XVIII of the Social Security Act as though they were qualified and appointed under 5 U.S.C. § 3105. On March 3, 1976, the Secretary of DHEW delegated to Trachtenberg, as Director of Hearings and Appeals, the task of implementing P.L. 94–202. Immediately, plaintiff and other persons holding appointments as hearing examiners became Temporary Administrative Law Judges. On April 6, 1976, Trachtenberg advised plaintiff of his intention to recommend that adverse action be taken against her. Although plaintiff had been designated for a promotion effective April 11, 1976, the papers were not processed because of the adverse charges pending against her. On May 26, 1976, defendant advised plaintiff that an increase to a higher grade was not appropriate because an adverse action against her had been recommended. Plaintiff was informed that a promotion would not only be inconsistent with the adverse charges stemming from her refusal to turn over the Coleman file in February, 1976, but would also jeopardize the integrity of the adverse action. Plaintiff complained to the Civil Service Commission on May 25, 1976, which ruled on July 8, 1976, that the denial or suspension of the promotion to a higher grade was contrary to pertinent regulation 5 C.F.R. 930.204. Plaintiff then promptly received the grade increase and a retroactive lump sum payment.

The Civil Service Commission ruled that since the classifications of all ALJ's were being upgraded, incumbents were entitled to the grade increase without regard to merit. In effect, the Commission ruled that the increase was not intended to reflect a "promotion" in the commonly understood sense but rather an "across the board" increase for all such positions. Plaintiff lost no pay as the result of her successful grievance filed with the Civil Service Commission.

■ Plaintiff's allegation against Trachtenberg with respect to the promotion issue is that he acted maliciously, willfully and intentionally (Complaint, ¶ 44); not that he acted in violation of a limitation placed upon his conduct by the Constitution or by statute. There is no doubt that Trachtenberg had authority to recommend adverse action for actions of a subordinate which were deliberate impediments to the execution of his delegated authority. Although he erred in not processing plaintiff's promotion or grade increase because of the pendency of adverse action, believing a promotion to be inconsistent with the proposed discipline, it cannot be said that by so doing he acted in violation of plaintiff's clearly established statutory or constitutional rights. A review of the uncontested portions of the record shows that the object of Trachtenberg's action was to recommend effective disciplinary action. It was not to construe the application of wage increases for all Temporary Administrative Law Judges. He communicated to plaintiff through the Personnel Department that the basis for her non-promotion was discipline related. The final administrative decision on the question as to whether plaintiff was entitled to a promotional increase did not rest with Trachtenberg but rather with the Civil Service Commission. Very simply, I find that Trachtenberg's actions with regard to plaintiff's promotion were taken in "good faith." He reasonably believed that where an adverse action was to be instituted, it was improper to grant plaintiff a promotion. The Commission later determined that he erred. However, under the circumstances, it cannot be said that plaintiff's statutory right to a promotion was so clear that Trachtenberg's withholding of it rose to the level of "bad faith."

■ Finally, plaintiff contends that Trachtenberg's recommendation for the adverse action initiated in June, 1977 was violative of her constitutional rights in that she was harassed and retaliated against for exercising quasi-judicial independence. This argument fails. Plaintiff's contention is premised upon the wholly erroneous assumption that she could resist lawful directives of the Appeals Council in the *Taylor* and *Coleman* cases. Plaintiff defied this directive at her own risk, including the risk

of adverse action for deliberate insubordination. That being the case, plaintiff cannot be heard to argue that Trachtenberg violated her constitutional rights by the institution of removal proceedings.

### B. *Social Security Act*

■ As to the federal defendants, plaintiff also asserts that they acted in violation of sections 205(g) and (h) of the Social Security Act, 42 U.S.C. § 405(g) and (h) (1976). She asserts, in essence: (1) her social security decisions are not reviewable by any entity other than the federal district court (Amended complaint, ¶ 56); (2) the Appeals Council was without authority under the statute and regulations to review her decision in the *Taylor* case and (3) the Appeals Council was without authority to remand the *Coleman* case. Plaintiff is barred by principles of collateral estoppel from relitigating the first issue here, since it was fully and fairly litigated before Judge McCarthy in plaintiff's removal proceedings. *See* text accompanying notes 5–6, *supra*. Collateral estoppel also bars relitigation of the second issue. Judge McCarthy fully addressed the issue of whether the Appeals Council had statutory authority to review and remand her *Taylor* order and concluded that it had such authority. Plaintiff's final contention, that the Council lacked authority to review and remand the *Coleman* case, is without merit, as discussed *supra*. *See* 20 C.F.R. § 416.-1467–68. Accordingly, summary judgment is granted in favor of the federal defendants on these claims.

## VIII. PRIVACY ACT CLAIMS

Plaintiff complains that the Bureau and individual officials including James B. Cardwell, Commissioner of the Social Security Administration, violated the Privacy Act of 1974, 5 U.S.C. § 552a(e), by secretly collecting information about her that was not relevant and necessary to carry out lawful operations and functions and by disseminating this information without her knowledge or consent and to her detriment. (Complaint, ¶–45–48). The gravamen of the complaint is that the Social Security and Bureau defendants solicited, received and retained in the *Bureau's* records, the complaints of "attorneys and other individuals" about plaintiff and that these complaints may be exposed to potential employers.

■ Plaintiff has not specifically alleged what "complaints" she is referring to, even though these records were made available for her inspection. (Declaration of Peter James Kurapka, ¶ 5, Exhibit F). These vague and unsupported allegations do not give defendants fair notice of the wrongs with which they are charged. Plaintiff has not indicated what documents, if any, were improperly collected and disseminated. Nor has she indicated the manner in which defendants collected such data. This alone, provides a basis for dismissal of these complaints. *See, e.g., Harper v. United States,* 423 F.Supp. 192, 196 (D.S.C.1976). However, even assuming that plaintiff charges defendants with receiving and retaining complaints made by CLS attorneys on behalf of their clients, I do not find from the undisputed facts that there was any violation of Privacy Act, 5 U.S.C. § 552a(e). The statute proscribes the collection of irrelevant information which is not necessary to accomplish a purpose of the agency. Clearly, letters written by attorneys appearing before Chocallo, which criticized her conduct are "relevant and necessary" within the meaning of the statute. They certainly are relevant to a determination of whether plaintiff was adequately and properly performing her duties as an ALJ. Thus, I find no violation of this section of the Privacy Act.

Plaintiff also complains that her rights under the Privacy Act were violated when defendants failed to respond to her request for all records pertaining to her maintained by the Bureau. I find no violation of the Act because her request was answered specifically. By letter dated May 25, 1977, plaintiff was advised by the Bureau that there existed and were available for her inspection, an official personnel file and a correspondence file. She was informed that these contained correspondence between

her and various Bureau officials, production records, pay, leave and attendance records and an employee record extension file. (Declaration of Peter James Kurapka, ¶ 5, Exhibit F thereto). Not satisfied with that response, plaintiff filed an appeal to the Secretary through Cardwell. The appeal was denied because not only had plaintiff been given the records, but she did not then complain that access to the records was denied. Thereafter on November 16, 1977, plaintiff made a request for information pertaining to the work activities of other ALJ's. On January 3, 1978, the Bureau made a specific reply identifying documents in response to the request and notifying her of their availability for copying and inspection. (Declaration of Kurapka ¶ 10—Exhibit K thereto).

 Plaintiff seeks damages against the individual defendants for "willful and intentional withholding of the requested data in plaintiff's files . . . ." Complaint, ¶ 15, p. 26. Any liability for a violation of the Privacy Act rests solely upon the agency and not the individuals. *Bruce v. United States,* 621 F.2d 914, 916, n. 2 (8th Cir. 1980). Therefore, plaintiff's actions against them must be dismissed. Defendants argue that in cases such as this, the only remedy available to plaintiff would be injunctive relief. 5 U.S.C. § 552a(g)(1), (3)(A). Clearly, there is no basis for injunctive relief here since plaintiff does not contend that the agency has withheld the requested information. She claims merely that defendants engaged in dilatory tactics. Even if plaintiff is entitled to a claim for statutory damages, 5 U.S.C. § 552a(g)(1), (4), she does not meet the statutory requirement that she prove "intentional and willful" conduct by the agency. There is simply no evidence of record that the agency acted in such a manner. The correspondence between the parties demonstrates that the agency attempted to comply promptly with plaintiff's request. Within two (2) weeks of plaintiff's request, the agency informed her of its need for more specific identifying information in order to comply with her request. Her subsequent letter to Trachtenberg on May 5, 1977 was referred to the agency for

action and within three weeks she was informed of the records regarding her which were maintained by the Bureau. These facts, very simply, do not demonstrate the "intentional and willful" conduct which is required by the Act before liability for statutory damages attaches. Thus, summary judgment is granted in favor of the Bureau on plaintiff's Privacy Act claims against it.

## IX. PRODUCTIVITY REQUIREMENT, CASE ASSIGNMENTS AND PEER REVIEW PROGRAM

 Plaintiff asserts that defendants imposed upon her certain requirements in violation of the Administrative Procedure Act. While the APA may confer a qualified right of decisional independence upon ALJ's, *Nash v. Califano,* 613 F.2d 10, 15 (2d Cir. 1980), I do not find this right to have been violated by the practices of which plaintiff complains. The gravamen of her complaint is that defendants, in particular Brown, Gitman, Trachtenberg and Lightfoot complained at various intervals about plaintiff's productivity. For example, on February 17, 1976, the Chief Administrative Law Judge, Phillip Brown, "earnestly" requested plaintiff to take steps to increase her productivity. (Complaint, Exh. H–88). Then, on April 6, 1976, he asked her, as he had asked other ALJ's, to report the disposition of cases and the number of hearings held on a weekly basis. (Brown Affidavit, ¶ 14). Plaintiff, in her reply to Brown's affidavit, does not state that there was a production requirement, but rather a *reporting* requirement. No penalty was attached to her failing to reach a quota. Therefore, there was no quota system imposed on plaintiff. Merely requesting ALJ's to account administratively to the Chief ALJ for the fulfillment of their assignments cannot constitute a constitutional violation nor a violation of the APA, to the extent that it recognizes a qualified right of decisional independence of ALJ's.

 Plaintiff also asserts that she was not assigned cases on a rotational basis during certain periods. Presumably, plaintiff

alleges that this violates the APA, 5 U.S.C. § 3105 which provides that "Hearing examiners shall be assigned to cases in rotation so far as practicable . . . ." The statute expressly limits any "right" to be assigned cases on a rotational basis by providing the qualifying language "so far as practicable." Here, the affidavit of James C. Lightfoot sets forth circumstances which indicate that in plaintiff's case, assignment on that basis was not practicable. He explained that Chocallo was appointed as a temporary judge and thus was not authorized to hear and dispose of the full range of cases. In addition, as a result of the tremendous backlog of cases, individual judge's dockets are examined to attain equitable caseloads, so that a judge will not be overloaded. Care is also taken to assure that judges are not given an inordinate number of out-of-city assignments. Lightfoot asserts that Chocallo was assigned cases according to these guidelines, and Chocallo has not come forward with evidence to suggest otherwise.

 Finally, she asserts that the imposition of a "Peer Review Program" upon all ALJ's, including her, violated her right to decisional independence under the SSA, APA, and violated unspecified constitutional rights. She seeks an injunction against the continued implementation of this program by defendants. Her claim of constitutional violation is without merit. Any right to decisional independence on the part of an ALJ is a matter of statutory right. As to the claim of statutory violations, she attacks the Peer Review Program only in an abstract manner. Such a system is not necessarily violative of the APA and SSA. However, plaintiff does not allege that this Review System actually infringed upon her decisional independence. Thus, she has failed to even state a claim. In any event, her individual claim for injunctive relief vis a vis the Peer Review Program has been rendered moot by her removal from office, which the United States District Court for the District of Columbia found was supported by substantial evidence in *Chocallo v. Prokop,* Civil Action No. 80–1053 (D.D.C. October 10, 1980). *See DeFunis v. Ode-*

*gaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

For the foregoing reasons, plaintiff's claims against all federal defendants are dismissed.